Argued 12 July, decided 15 August, rehearing denied 4 December, 1905.

## MUNDHENKE *v.* OREGON CITY MFG. CO.

81 Pac. 977; 1 L. R. A. (N. S.) 278.

ASSUMPTION OF RISK BY IMMATURE SERVANT.

1. A servant of immature years assumes such ordinary hazards or risks of his employment as he, through his degree of intelligence, knows or should know and appreciate, and consequently assumes such dangers as are so open and obvious to the senses that one of his capacity and experience should, in the exercise of the care and prudence common to persons of like age and experience, know and appreciate, but not others.

DANGER OF EXPOSED COGS AND GEARING — ASSUMPTION OF RISK.

2. The danger from exposed cogs and gearing is obvious even to a boy of seventeen, and is fairly a risk the danger of which he assumes by remaining at work in the exposed position.

NEGLIGENCE OF MASTER — CONTRIBUTORY NEGLIGENCE OF SERVANT —
QUESTION FOR JURY — ASSUMED RISK.

3. Whether a master was negligent in regard to the causes of an injury to a servant caused by his hand being caught in exposed cogwheels as he was falling on a slippery floor where he was obliged to work, and whether the immature servant was guilty of contributory negligence under the circumstances, are properly left to the jury, since their determination involves questions of care and precaution by both parties.

From Clackamas: THOMAS A. McBRIDE, Judge.

Statement by MR. CHIEF JUSTICE WOLVERTON.

This is an action by Walter F. Mundhenke, acting through his guardian, against the Oregon City Manufacturing Co. for the recovery of damages for a personal injury sustained by the plaintiff, a minor. He was at the time of the accident about the age of 16 years and 8 months. The injury of which he complains consists in the loss of parts of two fingers on the left hand. The defendant was engaged in operating a woolen mill, and the plaintiff was in its employ, charged with the duty of carrying yarn which was in the form of bobbins and distributing it to the looms. The particular acts of negligence upon which plaintiff predicates the action are stated in the complaint in substance as follows: That the defendant carelessly and negligently placed the box used for receiving yarn or filling next to exposed gearing on the side of one of the weaving looms, which said gearing the defendant carelessly

and negligently permitted to be exposed in a dangerous, defective and unsafe condition; that the defendant knowingly, carelessly and negligently allowed the floor of said room next to the box where the plaintiff was employed to carry yarn or filling to become oily and slippery, and in an unsafe and defective condition; that the plaintiff was inexperienced in the matter of his employment, and unacquainted with the dangerous, defective and slippery condition of the floor, and of the defective and dangerous condition of said machinery, and of the dangers incident to said employment; that it was the duty of the defendant herein to instruct the plaintiff as to the dangers incident to and in connection with his said employment, and of the dangerous and slippery condition of said floor, and of the dangerous condition of said exposed gearing; that the defendant failed and neglected to instruct and inform plaintiff of the dangerous and slippery condition of said floor and of the dangerous and defective condition of said exposed gearing, and because of such failure to so instruct plaintiff he was injured and damaged as hereinafter set forth; and that while plaintiff was so performing his duties as aforesaid, being engaged in putting said yarn or filling in the said box prepared by defendant, and by reason of defendant's negligence in allowing said floor to become oily and slippery and in allowing said gearing to be and remain exposed, and without fault on plaintiff's part, he slipped, and his hand came in contact with said exposed gearing, whereby he was injured — describing the injury. The answer joins issue with these alleged matters of negligence, and sets forth two separate defenses, (1) that the danger, whatever existed, was open and obvious, and that plaintiff assumed the risk; and (2) that he was himself negligent, and contributed to the injury. When plaintiff rested, defendant moved for a nonsuit, which motion being

denied, the trial proceeded, resulting in a verdict and judgment for plaintiff for $400, from which the defendant appeals.                                          AFFIRMED.

For appellant there was a brief over the names of *Hogue & Wilbur* and *Hedges & Griffith,* with an oral argument by *Mr. Ralph William Wilbur.*

For respondent there was a brief over the name of *U'Ren & Scheubel,* with an oral argument by *Mr. Christian Scheubel.*

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

It is first necessary to understand the nature of the machinery and the attending conditions before alluding to the facts touching the manner in which the accident occurred. At the end or side of the looms, facing on an aisle or passageway, is a set of gearing, consisting of two cogwheels working into each other, the lower being much the larger. The point of contact of the gearing is from two feet to two feet six inches above the floor. Immediately at the end of the looms boxes were placed for receiving the yarn or filling. These stood against the lower cogwheel of the gearing, and when being filled the person doing the work would naturally stand in the passageway in front of the box and opposite the gearing, so that the width only of the box would intervene between him and the gearing, which was otherwise exposed, without guard or other protection to prevent contact with it. The plaintiff testified that he was carrying filling for the weavers, and had been so occupied for three months; that neither the foreman of the mill nor any one else had instructed or cautioned him relative to the danger of coming into contact with the machinery; that he slipped, and was caught in the cogwheels of the loom, and his fingers were crushed. Describing the incident further, he says: "I

47 OR.——9

slipped with my left foot, and threw up my hand so I wouldn't fall, as a person naturally will throw out his hand when he slips"; and further testifies that he was taking the bobbins from the basket in which he had carried them to the box and putting them into the box, which was full, or nearly so, when his foot slipped, he having all his weight on one foot at the time; that the floor was "greasy and slippery"; that he had slipped and fallen upon it before, and that he always tried to do his work carefully; that neither the foreman nor any one else had cautioned him to be careful in standing about the boxes, or that he might slip upon the floor; that the only instructions given him were as to where to get the yarn and where to deposit it, and that nothing was said to him about the danger of slipping and falling or of getting his fingers in the cog-wheels.

On cross-examination he testified that he had about 20 boxes to fill altogether, and further, as interrogated:

"Q. You saw those cogs, you knew where they were?
A. Yes, sir.

Q. You saw those when you first went there?
A. Yes, sir.

Q. Did you see them as they came together in the mesh — right where they came together — those cogs?
A. Yes, sir.

Q. Did you know at that time that if you would get your fingers caught in them you would get hurt?
A. Anybody would know you would get hurt if you would catch your fingers in there, but I don't think anybody was intending to get hurt there, though. * *

Q. You knew it would be dangerous if you would get your fingers in there?
A. If you would think about it, yes, sir. * *

Q. What was the condition of this floor when you went there, along that aisle and about this loom?
A. The same as it always is.

Q. Has it always been that way?

A. Yes, sir. .

Q. Just as it was to-day?

A. If they didn't clean it up right away, it was. * *

Q. You say you had slipped a number of times there in the mill. Say how soon after you went there was the first time you slipped?

A. I might have slipped the same day. * *

Q. How often did you slip?

A. I couldn't say how often.

The witness further testified that the company swept and cleaned the floor once a week, on Saturdays; that the accident occurred on Friday, and that the floor grew more slippery toward the end of the week than it was at the beginning, and that it becomes oilier when it has not been swept for a long time. This testimony was corroborated by other witnesses. Fred Hoag, another "filler boy," testified that the "floor was pretty oily in some places," and that he had himself slipped and fallen thereon. It was later shown that the box was from one and one half to two feet deep and perhaps two feet wide, and that the top of it was from four to six inches below the point of contact of the cogs.

1. That it was the duty of the defendant to provide safe machinery and a reasonably safe place in and about which to work for plaintiff and other employees to discharge the duties assigned them is conceded, but it is contended that defendant was not required to provide and furnish the very best and safest, and that if what was provided and furnished was defective, and not so well equipped and guarded as it might have been to render it more safe and secure against the liability of accident and injury, plaintiff knew and fully appreciated the exact conditions, and that by engaging and continuing in the employment he assumed the risk, and, injury having resulted to him in the course of his employment, defendant is not liable.

This is the strong contention of defendant, and it has been urged by its counsel with signal ability. There is in this case the element of the youth of the party injured. It has been determined by this court that only such care and caution to avoid the dangers of accident can be expected or required of a person of immature age as is common to other persons of his years of prudence, forethought and discretion: *Dubiver* v. *City Ry. Co.*, 44 Or. 227 (74 Pac. 915, 75 Pac. 693, 2 St. Ry. Rep. 821). This must necessarily be so, because infancy and youth spring into manhood and maturity by degrees only, and responsibility develops accordingly. In general the servant assumes the ordinary risks and dangers incident to the employment in which he engages to the extent, and only to such extent, as they are known to him; but if the employee be of immature years the assumption of risk is commensurate only with his age, experience and capacity. As is said by Judge SANBORN in *Bohn Mfg. Co.* v. *Erickson,* 55 Fed. 943, 946 (5 C. C. A. 341): "He does not assume latent dangers known to the master that are actually unknown to him, and that one of his capacity and experience would not have known by the use of ordinary care." Again, he continues: "Risks and dangers that are apparent to the man of long experience and of a high order of intelligence may be unknown to the inexperienced and ignorant; hence, if the youth, inexperience and incapacity of a minor who is employed in a hazardous occupation are such that a master of ordinary intelligence and prudence would know that he is not aware of or does not appreciate the ordinary risks of his employment, it is his duty to notify him of them, and instruct him how to avoid them. This notice and instruction should be graduated to the age, intelligence and experience of the servant. They should be such as a master of ordinary prudence and sagacity would give under the circumstances, for the purpose of enabling the

minor not only to know the dangerous nature of his work, but also to understand and appreciate its risks and avoid its dangers." The doctrine is reaffirmed much later by the same learned judge: *Cudahy Packing Co.* v. *Marcan*, 106 Fed. 645 (45 C. C. A. 515, 54 L. R. A. 258).

So it is that a minor assumes the ordinary hazards or risks of his engagements that he through his degree of intelligence knows or should know and appreciate, and consequently he assumes those dangers also that are so open and obvious to the senses that one of his age, capacity and experience would, in the exercise of the ordinary care and prudence common to persons of like age and experience, know and appreciate, and would be expected to be sufficiently attentive and alert to avoid. In other words, the minor's assumption of the hazards and dangers attending his employment is to be determined by his capacity to know, understand and appreciate them, and his caution, alertness and aptitude as well to avoid them. The test is what would ordinarily be expected, in a general sense, of persons of the minor's age and experience, whose conduct is under scrutiny; and this is so even if the child is sui juris — that is, has reached years of discretion, and has become, as a matter of law, responsible for his conduct. No higher degree of care will be expected of him than is usually exercised by persons of similar age, judgment and experience: 1 Labatt, Mast. & Serv. §§ 291, 398; 7 Am. & Eng. Enc. Law (2 ed.), 405, 406, 407; *Plumley* v. *Birge*, 124 Mass. 57 (26 Am. Rep. 645); *Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 572 (3 Am. Rep. 506); *Dowling* v. *Allen County*, 74 Mo. 13 (41 Am. Rep. 298); *Rummel* v. *Dilworth Porter Co.*, 131 Pa. 509 (19 Atl. 345, 346, 17 Am. St. Rep. 827); *Railroad Co.* v. *Gladmon*, 82 U. S. (15 Wall.) 401 (21 L. Ed. 114).

2. With this exposition and understanding of the law relating to the assumption of risks by minors, we may turn

to the facts of the case. As it pertains to the exposed gear-
ing at the end of the loom, that presented a danger so open
and obvious that plaintiff, considering his age, must surely
have known and fully appreciated it. He could not have
been so stupid as not to have known that if he got his hand
between the cogs he would get hurt. He must have known
also how to avoid the danger, which was simply not to come
into contact with it, and the responsibility was his, notwith-
standing he was not warned of a result which he must have
understood and appreciated as well without the warning:
*Ciriack* v. *Merchants' Woolen Co.*, 146 Mass. 182 (15 N. E.
579, 4 Am. St. Rep. 307); *Carrington* v. *Mueller*, 65 N. J. Law,
244 (47 Atl. 564). This in the abstract, unconnected with
the condition of the passageway and floor upon which plain-
tiff was required to walk and stand while in the discharge
of the duty assigned him..

3. Plaintiff's evidence tended to show that the way was
swept and cleaned but once a week, that it was allowed to
become greasy and oily, and consequently slippery, in-
secure and unsafe for use. Plaintiff had slipped and fallen
perhaps a number of times, and so had Hoag, another
"filler boy," attesting unmistakably its insecurity. The
accident occurred on Friday, and the sweeping and clean-
ing was usually done on Saturday, so that it would be but
a reasonable inference that the way was in a bad condition
at the time of the accident. The proximate cause of the
accident, according to plaintiff, was the circumstance that
he slipped on the floor, thus causing him to throw out his
hand, which came in contact with the gearing. He was
not warned as to the condition of the passageway, but,
notwithstanding, he must have known much about it.
This he admits. It was, however, a variable condition that
he had to contend with. Sometimes the way would be less
safe than others, and it would be going quite beyond the
authorities to say as a matter of law that he did not use

or observe the care, precaution and foresight common to one of his age, intelligence and experience that would be expected of him to avoid getting his hands between the cogs.

The condition and pertinent fact are so peculiarly a matter for the jury that we are not disposed to take it away from them. The gearing was very near the place in which plaintiff was depositing the filling, and a misdirection of the hand in but a few inches would carry it to the point of danger; and it is reasonably inferable that the slipping of the foot was the adequate proximate cause of the accident. It is but a humane duty that the employers of youth about factories should observe every reasonable precaution to protect the comparatively unwary from accident and disaster. If the gearing in the present case had been covered or hooded, which could have been done at a trifling expense, no accident could have happened, and if the aisle had been kept clean of grease it is quite probable that the result would have been avoided. The condition of the passageway was a variable one as we have seen, and was surely out of condition at times, as the carrier boys were slipping and falling occasionally. This presents a matter for the jury to say, in the first place, whether or not it was negligence in the defendant to allow it to get into an unsafe condition, and, in the second place, it was also manifestly pertinent for them to determine whether plaintiff used the precaution that boys of his age are wont to observe to avoid the danger. It is a matter of common knowledge that a boy of the age of plaintiff would not be as careful and cautious in going to and fro upon a slippery way as an adult, and it was for the jury to say whether he acted with that precaution in the premises as is common to other boys of his age and experience; for, if he did so act, negligence could not be imputed to him, and he assumed no risk that he

would not have avoided by the observation of like precaution.

Both these inquiries being decided against the defendant, the judgment of the circuit court should be affirmed, and it is so ordered.                          AFFIRMED.