Argued December 5, decided December 24, 1912.

THORNTON v. PORTLAND RY. LIGHT & POWER CO.[*]

(128 Pac. 850.)

**Municipal Corporations—Police Power—Regulations—Form—Ordinances.**

1. Under Portland charter (Act January 23, 1903, Article I, § 45 [Sp. Laws 1903, p. 3 et seq.]), providing that the council's power can be exercised only by ordinance unless otherwise ex-

---

[*]As to what acts of child in attempting to cross street car tracks are negligence as matters of law, see note in 11 L. R. A. (N. S.) 166.

pressly provided, under subdivision 46, Section 73, Article IV, empowering the council to require railroads to provide fenders and other safety appliances, etc., by and under Act February 18, 1903 (Laws 1903, p. 94, § 1), Section 7007, L. O. L., requiring cars to be equipped with fenders of a specified kind provided that, if the mayor and council of the city deem it to the best interests of the inhabitants to substitute another approved design, they may do so, the authority conferred by such proviso can be exercised in Portland only by ordinance.

### Trial—Death of Child on Track—Instructions.

2. In an action against a street railway company for death of a child struck by a car, an instruction that, if the child's life would have been saved if the car had been equipped with a fender, of the kind required by law, plaintiff should recover was not erroneous as ignoring an issue of contributory negligence, where another instruction stated that the child could not be held to the same degree of care for her safety as would be exacted from an adult or from an older child, but the law demanded of her only that care that an ordinarily prudent child of her age, judgment and discretion would have used under similar circumstances.

### Appeal and Error—Review—Instructions.

3. On appeal the jury will be presumed to have considered the instructions in their entirety, and, where the whole charge fairly states the law applicable to the evidence, an exception to a single instruction will be unavailing when not within itself prejudicial to appellant.

### Street Railroads—Death of Pedestrian—Evidence—Sufficiency.

4. In an action against a street railway company for death of a child struck by a car, evidence held to warrant a finding that her life would have been saved had the car been equipped with a fender such as is required by law.

From Multnomah:  JAMES W. HAMILTON, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by Louis P. Thornton, as administrator of the estate of Ruth A. Thornton, deceased, against the Portland Railway, Light & Power Company, a corporation, to recover damages resulting to her estate by reason of her death which was caused by being

knocked down and run over by one of the defendant's cars. The facts are that defendant owns at Portland, Oregon, railways on which it operates electric cars in transporting passengers; a part of its system consisting of double tracks laid north and south along East Twenty-Eighth Street. This highway is connected on the east side with East Davis Street which enters it at a right angle but does not extend beyond its west border. On the west side of East Twenty-Eighth Street, and immediately south of the south line of East Davis Street, if it were extended, is located a public school building where, during the sessions of the school, numerous small children attend, many of them being obliged to cross the defendant's tracks at East Davis Street in going from and returning to their homes in the vicinity. On Tuesday, January 20, 1910, at about 8:50 a. m., as one of the defendant's cars was moving north on the east track mentioned, a loaded garbage wagon, having high box sides and a canvas top over the seat and being hauled in the same direction, occupied a part of the east track, retarding the progress of the car until the vehicle was turned to the right at East Davis Street. As soon as the track was clear more electricity was applied causing the car suddenly to move forwards. In the meantime Ruth A. Thornton who was 6 years, 10 months, and 7 days old, responding to the summons of the school bell, hurrying along the board walk on the north side of East Davis Street, and passing in front of the horses attached to the garbage wagon, reached the east track just in time to be struck by the rapidly approaching car which hurled her some distance forward, and before the momentum could be sufficiently checked the car had passed over her body, killing her instantly.

The negligence alleged as a basis for the recovery was the failure of the defendant (1) to keep a lookout ahead of the car; (2) to give warning of its approach; (3) to

have the car under control when passing an adjoining building where so many small children were then assembling; (4) to operate the car at a moderate rate of speed at such a place; (5) to halt the car when the motorman saw or could have seen Ruth A. Thornton crossing the track, there being ample time and space within which to prevent a collision if such care had been exercised; (6) to equip the car with a fender or guard required by law, which if the enactment had been complied with would have saved her life and prevented any hurt, and that each of such acts of negligence was, and that all of them were, the proximate cause of the injury to and the death of Ruth A. Thornton. The answer denied the material averments of the complaint and alleged in effect that the injury referred to resulted from an unavoidable accident on the part of the defendant; that the death mentioned was caused by Ruth A. Thornton's own carelessness; that the casualty occurred within the corporate limits of Portland; that the common council of that city had adopted resolutions approving the Hunter dropguard or fender for use upon street cars operated in that municipality; and that at the time of the injury the car causing it was equipped with the fender thus prescribed, setting forth in detail the circumstances of each of such averments. The reply put in issue the allegations of new matter in the answer, and the cause having been tried resulted in a judgment in plaintiff's favor for the sum of $3,000, and the defendant appeals.                    AFFIRMED.

For appellant there was a brief over the names of *Messrs. Wilbur, Spencer & Dibble* and *Mr. Thomas Mannix,* with an oral argument by *Mr. Rufus A. Leiter.*

For respondent there was a brief over the names of *Messrs. Malarkey, Seabrook & Stott* and *Mr. William H. Powell,* with oral arguments by *Mr. Ephraim B. Seabrook* and *Mr. Powell.*

Sig. 16

MR. JUSTICE MOORE delivered the opinion of the court.

Exceptions having been duly taken to the language used by the court, it is maintained that errors were committed in charging the jury as follows:

"The laws of this State in force at the time of the death of Ruth A. Thornton provided as follows: 'Every street car run, operated, or used on any street car line in the State of Oregon, other than operated by horses, shall be provided with good and substantial aprons, fenders, or guards, which shall be constructed so as to be firmly attached to the front end of each car and extended out in front of the front platform or in front of such car not less than two feet, and so arranged that the forward end of such apron, fender, or guard shall not be more than three inches above the rails; and such apron, fender, or guard shall be built or constructed so as the motorman, or the person in charge of such car, can drop the front end of such apron, fender, or guard onto the track so as to prevent any person from being thrown down and run over by or caught beneath or under such car.' I instruct you that defendant's street car which ran over and killed Ruth A. Thornton was not at the time provided and equipped with any apron, or fender, or guard of the kind and in the manner required by law, and that the fender on said car at that time was not constructed and arranged and attached to said car as required by law."

The law from which the court so quoted is a part of Section 1 of an act filed with the Secretary of State February 18, 1903 (Laws, 1903, p. 94), and now incorporated in Section 7007, L. O. L. The remainder of the section referred to reads as follows:

"Provided, that however, in the judgment of the mayor and the members of the common council of any city or town incorporated under the laws of this State, it shall be deemed for the best interests of the residents and inhabitants of any such city or town to substitute in lieu of the apron, fender or guard, hereinbefore provided for, another approved design of apron, fender, or guard, said mayor and said city council shall have such right whenever there shall be entered upon the records of said city or town the reasons for making such substitution."

Another clause of that statute provided that the enactment should not be put in force or effect until January 1, 1904.

Pursuant to the proviso quoted, the legislative body of the city of Portland on September 7, 1904, adopted a resolution substituting for the appliances prescribed by such statute the Hunter dropguard fender for use upon the cars operated on the defendant's city and suburban lines. This resolution was rescinded May 16, 1907, but on the 19th day of the following month another resolution was adopted reaffirming the resolution of September 4, 1904, and providing for the use on the defendant's cars of such fender for a period of four months from July 1, 1907. October 27, 1907, another resolution was adopted providing that such fender, then in use by the defendant in Portland, should continue to be the legalized guard until such time as the common council should decide otherwise. It is argued that conformable to the act of February 18, 1903, the resolutions referred to were adopted, and, the latter determination of the common council being in force when the accident happened, the rule thus prescribed governed the operation of the car causing the injury, which car at the time of the hurt was equipped with the Hunter dropguard fender as directed, and, this being so, the jury were improperly instructed that such car at that time was not provided with a fender constructed, arranged, or attached as required by law. In support of the legal principle thus asserted, the defendant's counsel cites the case of *Plinkiewisch* v. *Portland Ry., L. & P. Co.*, 58 Or. 499 (115 Pac. 151), where it is maintained that the resolutions adverted to were upheld as proper exercises of the authority conferred by the statute. In that case no question was suggested in the briefs or intimated at the trial in this court that the measure of the police power granted by the proviso mentioned could be employed in

any other manner than by an ordinance. It is evident that the means adopted by the common council of the city of Portland to put into operation the proviso referred to, though prescribing a general rule of conduct, were not intended to be permanent in their operation, and for that reason the license granted might have been exercised by resolutions. 2 Abbott, Mun. Corp. 514. "A resolution or order," says Mr. Justice Magruder in *Chicago & N. P. R. R. Co.* v. *Chicago,* 174 Ill. 439, 445 (51 N. E. 596, 598), "is not a law, but merely the form in which the legislative body expresses an opinion. An ordinance prescribes a permanent rule of conduct or government, while a resolution is of a special and temporary character. Acts of legislation by a municipal corporation, which are to have continuing force and effect, must be embodied in ordinances, while mere ministerial acts may be in the form of resolutions. It is true that where the charter of a municipality is silent as to the mode in which the city council shall perform an act, the decision of the council may be evidenced by either a resolution or an ordinance. But where the charter requires an act to be done by ordinance, or where such a requirement is implied, as it is here, by necessary inference, a resolution is not sufficient, but an ordinance is necessary."

1. It is believed that the charter of the city of Portland, in force when the proviso in question went into effect, governs an application of the measure of the police power thus delegated to the municipal corporation. Section 45 of Article I of the act of January 23, 1903 (Sp. Laws 1903, p. 3 *et seq.*), reincorporating that city, reads, as far as material herein, as follows:

"The power and authority given to the council by the charter can be exercised only by ordinance, unless herein otherwise expressly provided."

Subdivision 46 of Section 73 of Article IV of that charter, conferring power upon the council, authorizes

that legislative body "to require all railways and railroads to provide proper fenders, and other safety appliances, and the latest and most improved machinery and methods for their cars and tracks, and the operation thereof, for the protection of human life and the lessening of danger thereto; and to enforce such regulations by such fines and penalties as may be prescribed by ordinance." The authority designated in the proviso having been conferred without specifying in the statute the mode of its operation, it could be employed in Portland only by an ordinance, since the charter of that city did not expressly provide that the power might be exercised by a resolution. The only law regulating the kind of fenders required to be used on street cars operated upon railways in that city at the time of the accident was the general statute prescribing the characteristics of the guard there demanded, and, this being so, no errors were committed in giving the instructions criticised.

2. The court said to the jury as follows:

"If you find that the defendant's car which ran over and killed Ruth A. Thornton had been at the time provided and equipped with an apron or fender or guard of the kind and in the manner required by law, the life of said Ruth A. Thornton would have been saved thereby, under the instructions I give you on that subject, your verdict should be for the plaintiff."

An exception having been taken to this part of the charge, it is insisted that an error was committed in this respect. It is argued that the language thus employed ignores the element of contributory negligence, and that no evidence was offered tending to show that the life of this little girl could have been saved by the use on the car of such a guard as is described in the statute. The court in another instruction, referring to the measure of caution required of her, said, in effect, that she could not be held to the same degree of care for her safety as would

be exacted from an adult or from an older child, but the law demanded of her only that extent of solicitude for her preservation that an ordinarily prudent child of her age, judgment, and discretion would have exercised under similar circumstances. This instruction last referred to was a sufficient explanation of the law applicable to a child not seven years old, and enabled the jury to determine from their experience what degree of care a child of such immature years could reasonably be expected to exercise. *Dubiver* v. *City Ry. Co.*, 44 Or. 227 (74 Pac. 915: 75 Pac. 693: 1 Ann. Cas. 889); *Macdonald* v. *O'Reilly*, 45 Or. 589 (78 Pac. 753); *Mundhenke* v. *Oregon City Mfg. Co.*, 47 Or. 127 (81 Pac. 977: 1 L. R. A. [N. S.] 278); *Westman* v. *Wind River L. Co.*, 50 Or. 137 (91 Pac. 478).

3. It must be assumed that in reaching a verdict the jury considered the instructions in their entirety, and, where the whole charge fairly states the law applicable to the evidence, an exception to a single instruction, when not within itself prejudicial to the party complaining thereof, will be unavailing. *State* v. *Gray*, 46 Or. 24 (79 Pac. 53); *State* v. *Megorden*, 49 Or. 259 (88 Pac. 306: 14 Ann. Cas. 130).

The evidence shows that the fender on the car causing the injury, instead of extending out in front of the platform not less than two feet and so arranged that the forward end of the guard was not more than three inches above the rails, as required by Section 7007, L. O. L., did not reach as far forward as the front of the platform and was about 10 inches above the track. This guard could be lowered by stepping on a bolt in the vestibule whereupon the apron fell of its own weight to a line much nearer the rails. The motorman who had charge of the car when the accident occurred testified that when the little girl came into sight in front of the horses that were attached to the garbage wagon, which vehicle had

obstructed his view in that direction, she was then so near that he did not have time to release the fender before the accident happened, though he reversed the power and applied the brakes.

4. The jurors, as men of ordinary observation and intelligence, could undoubtedly say, with that degree of certainty required to be expressed by a verdict, whether or not the fender, which at all times extended so far in front of the platform and so near the rails that a person falling immediately in front of, or being struck at such place by an approaching car, must necessarily have been taken up by, and carried along on, the apron until the car could be halted, thereby preventing such a person from being run over and killed. It is believed that the jury, from the evidence received, were authorized to find that, if the car in question had been equipped with a fender such as the statute demanded, the life of the little girl might have been saved, and, this being so, no error was committed in giving the instruction which permitted a deduction of fact to that effect.

Other errors are assigned, but, deeming them unimportant, the judgment is affirmed.          AFFIRMED.