Argued September 29, affirmed October 13, 1914.

## RUDOLPH v. PORTLAND RY., L. & P. CO.

(144. Pac. 93.)

**Street Railroads—Ordinances—Postponement of Operation.**

1. Under Section 7007, L. O. L., requiring every street-car to have fenders of a kind therein prescribed, provided that, whenever in the judgment of the mayor and members of the common council of any city it shall be for the best interests of the residents to substitute another approved design of fender, the mayor and council may do so on entering on the records the reason for the substitution, where a city ordinance, enacted over eight years after this section went into effect, declares the judgment of the mayor and council that a certain kind of fender should be substituted, a portion of the ordinance postponing its operation for over three months was *ultra vires* and void.

> [As to power of municipal corporations to make and enforce regulations for the public protection from street railways, **see** note in 104 Am. St. Rep. 636.]

Street Railroads—Operation—Equipment of Cars.

2.    The operation of street-cars not equipped with a fender, as required by a valid city ordinance, from which an injury to a child upon the track resulted, was negligence *per se.*

New Trial—Proceedings to Procure—Sufficiency of Motion.

3.    Though a motion for new trial did not specifically state that there was no evidence to sustain the verdict as to some material issue, the court properly granted a new trial, where such was the fact.

From Multnomah: HENRY L. BENSON, Judge.

Department 1.    Statement by MR. JUSTICE MOORE.

An action was instituted by Marcus M. Rudolph, as administrator of the estate of his daughter, Maxine Melba Rudolph, deceased, against the Portland Railway, Light & Power Company, a corporation, to recover damages occasioned by her death, which was caused by one of the defendant's electric cars running over her.   The facts out of which the cause arose are that the defendant owns on Nebraska Street, in the City of Portland, a single line of railway, extending east and west, on which track it operates passenger cars propelled by electricity.   The plaintiff on July 16, 1912, resided on the south side of that street, and had caused to be piled, on the curb in front of his premises, wood; the tier being 24 feet in length.   The east end of the pile extended about five feet farther east than the steps which afforded an entry, up an incline, from the sidewalk to his house.   About 6:50 P. M. of that day, as he was laying planks near the west end of the wood, in order to wheel it into the shed, his daughter Maxine, then 4 years, 1 month and 2 days old, who had been playing with other children on the lawn, suddenly ran down the steps and, passing around the east end of the wood, went upon the street.   The plaintiff, seeing the movement of the little girl, instantly looked west up the street and saw a car about 70 feet distant,

72 Or.—36

approaching on a downgrade of about 4 per cent. He immediately ran around the west end of the wood and started up the street toward the car, shouting to the motorman to halt. No attention to such request was seemingly given, as far as could be observed from any diminution of the speed of the car, whereupon the plaintiff turned and ran toward his daughter, but before he could reach her she was knocked down by the car and dragged along the track, instantly killing her.

The negligence alleged in the complaint as a basis for the recovery is in substance: (1) The failure to provide for the car such a fender or guard as is required by law; (2) the carelessness and incompetence of the motorman; and (3) the last clear chance was also pleaded, and it was averred that the motorman failed to drop the fender or to stop the car in time to avoid the accident.

The answer denied the material averments of the complaint, and for separate defenses alleged in effect: (1) That the plaintiff's daughter suddenly appeared upon the track in such close proximity to the car that the persons in charge thereof could not have seen her, and that her presence was unknown to the servants of the defendants; (2) that she was of such immature years and insufficient understanding as not to know or realize the consequences of her acts, and that the plaintiff was negligent in permitting her to go upon the railway track; and (3) that the operation of the car causing the injury was governed by an ordinance of the City of Portland, setting forth the substance thereof.

The reply put in issue the allegations of new matter in the answer, and, the cause having been tried, the jury found for the defendant, upon which verdict a judgment was rendered. Thereupon the plaintiff's counsel moved to set aside the judgment and for a new

trial, based on the following grounds: (1) Irregularity in the proceedings; (2) misconduct of the prevailing party; (3) newly discovered evidence, setting forth the particulars of each of these assignments; (4) "insufficiency of the evidence to justify the verdict; (5) the verdict is against the law; (6) error in law occurring at the trial and excepted to by the plaintiff."

Predicated on this motion the court made findings of fact as follows:

"(1) That the street-car which caused the injury to Maxine Melba Rudolph, resulting in her death, was not equipped with a fender as required by law, in this: (a) The pretended fender thereon did not extend out in front of the car, nor was it so constructed or arranged that any portion thereof could be dropped to the track to prevent persons from being run over by said car, nor was the said fender so constructed, either as to design or place of its location, as to prevent persons from being injured or struck by said car or run over thereby, nor was the said fender so constructed that the same was above the rails the distance provided by law. In these particulars the said fender did not comply either with the General Laws of Oregon, or with the requirements specified in the charter of the City of Portland, nor with the requirements of the ordinance introduced in evidence. There is a total absence of evidence showing that the company had any such fender on the cars as is prescribed or required by law.

"(2) The testimony shows that the motorman in charge of the car saw, or could have seen, the dangerous position of Maxine Melba Rudolph, and appreciated, or could have appreciated, her dangerous position in time to have stopped said car and prevented the injury, but that said motorman, by reason of his incompetency, as alleged in the complaint, failed to stop the car.

"(3) There is no evidence sufficient to show contributory negligence on the part of either the said

Maxine Melba Rudolph, who is a child of the age set forth in the complaint, nor any contributory negligence on the part of the plaintiff.

"(4) By reason of the absence of evidence on these points, the court concludes that the death of Maxine Melba Rudolph was caused by the negligence of the defendant corporation, and that the jury erred in returning a verdict for the defendant. The court further finds that the jury erred in not following the directions of the court given to it on these subjects."

Based on these findings the following conclusion was deduced:

"It is therefore considered, ordered and adjudged that the said verdict and judgment be set aside, and that a new trial be granted plaintiff herein."

From this order the defendant appeals.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Griffith, Leiter & Allen,* with an oral argument by *Mr. Rufus A. Leiter.*

For respondent there was a brief over the names of *Mr. Isham N. Smith* and *Mr. John F. Logan,* with an oral argument by *Mr. Smith.*

Mr. Justice Moore delivered the opinion of the court.

Sections 1, 2 and 4 of an act of the legislative assembly filed in the office of the Secretary of State February 18, 1903, are incorporated in L. O. L. as Sections 7007, 7008 and 7009. Section 3 of the enactment, however, is not thus set out, but reads:

"The provisions of this act shall not be in force or effect until the first day of January, 1904": Gen. Laws Or. 1903, p. 94.

Section 1 of the law mentioned is as follows:

"Every street-car run, operated, or used on any street-car line in the State of Oregon, other than operated by horses, shall be provided with good and substantial aprons, fenders, or guards which shall be constructed so as to be firmly attached to the front end of each car and extend out in front of the front platform or front end of such car, not less than two feet, and so arranged that the forward end of such apron, fender, or guard shall be not more than three inches above the rails; and such apron, fender, or guard shall be built or constructed so that the motorman, or other person in charge of such car, can drop the front end of such apron, fender, or guard on the track, so as to prevent any person from being thrown down and run over by or caught beneath or under such car: Provided, that whenever, in the judgment of the mayor and the members of the common council of any city or town incorporated under the laws of this state, it shall be deemed for the best interests of the residents and inhabitants of any such city or town to substitute in lieu of the apron, fender, or guard, hereinbefore provided for, another approved design of apron, fender, or guard, said mayor and said city council shall have such right whenever there shall be entered upon the records of said city or town the reasons for making such substitution."

Relying upon the power thus conferred, the council and mayor of the City of Portland adopted a resolution prescribing the fenders required to be used on street-cars that were to be used in that municipality. In an action against the defendant herein to recover damages for the death of a little girl, occurring January 20, 1910, and caused by her being run over by an electric car, it was held, in construing provisions of the city charter, that the authority so delegated by the proviso contained in Section 7007, L. O. L., could not be employed by a resolution, but only by an ordinance:

*Thornton* v. *Portland Ry., L. & P. Co.,* 63 Or. 478 (128 Pac. 850).

Evidently anticipating such determination, Ordinance No. 23,259 of the City of Portland was regularly passed, after the injury last referred to had occurred, prescribing the fenders to be used on street-cars operated in that city. This municipal enactment contained an emergency clause whereby the law went into immediate effect May 13, 1911, upon its approval by the mayor. Section 1 thereof was amended November 16, 1911, by Ordinance No. 24,353, which provides generally that it shall be unlawful for any corporation owning or operating street railways within the city after September 1, 1912, to run any street-car using air-brakes without having attached to the front end of the car a fender projecting at least 24 inches, consisting of an apron composed of specified material and a life guard or vertical fender extending at least 3 inches in front of the bumper. Such apron to be attached to pistons working within cylinders, so that, by an emergency application of the air, the apron will be thereby lowered and held on the rails by the air pressure within such cylinders. The apron of the fender to have a projecting bar parallel with and in front of the apron, whereby the bar coming in contact with any pedestrian on the track, air will thereby be simultaneously admitted into the cylinders operating the fender and into a cylinder controlling the brakes. The amended ordinance contained a proviso to the effect that, on or before the points of time hereinafter specified, at least the number of cars mentioned should be thus equipped, to wit: October 1, 1911, 50; March 1, 1912, 100; April 1, 1912, 150; May 1, 1912, 200; June 1, 1912, 250; July 1, 1912, 300; July 15, 1912, 350; and August 1, 1912, 400. A failure so to equip such cars within the re-

spective periods and in the numbers specified was to be deemed a violation of the ordinance.

Section 8 of the ordinance provided that, for any disobedience of its provisions, the corporation found guilty thereof should be punished by a fine of not less than $50 nor more than $500, and each day's operation of cars without being so equipped should be recognized as a separate offense. Section 2 of the enactment prescribes the fenders required to be used on cars operated in Portland not having air-brakes. Section 8 thereof expresses the judgment of the mayor and common council of that city, as required in the proviso of Section 7007, L. O. L. That clause of the ordinance also contains a further statement as follows:

"Whereas it is impossible to equip all of the streetcars operated within the city limits of the City of Portland with fenders and guards as prescribed in sections 1 and 2 of this ordinance prior to the respective dates prescribed by each of said sections 1 and 2, the use of the type of fender or guard known as the 'Hunter Drop Guard Fender' * * is hereby approved until the dates respectively specified in said sections 1 and 2 of this ordinance, from and after which said dates it shall be unlawful to use upon said street-cars * * any other type of fenders or guards than the types prescribed in said sections 1 and 2 respectively."

The testimony shows that the car causing the injury was of type "F. No. 340," and was operated on the streets of Portland by using air-brakes, but it did not have the fender or apron prescribed by section 1 of the amended ordinance. The guard used upon such car, however, was the one mentioned in section 2 of the enactment.

Patrick L. Betech, the motorman in charge of the car at the time of the accident, testified that, immediately before it occurred, he heard a man screaming, and look-

ing forward he saw the little girl coming from behind the east end of the woodpile, about 20 or 25 feet ahead, running northwesterly, but that she was only 3 or 4 feet from the car when she reached the track; that as soon as the witness saw her he applied the emergency-brakes and tried to step on the pin whereby the guard could have been released, but that, his foot slipping, he missed the catch, and the fender did not fall. No evidence was offered by the defendant to show any attempt on its part to comply with the provision of section 1 of the amended ordinance.

It will be remembered that the proviso found in Section 7007, L. O. L., empowers the mayor and common council of Portland, whenever in their judgment it should be deemed for the best interests of the inhabitants of this city to substitute, in lieu of the fender provided for by that statute, another approved guard, the exercise of which right was to be evidenced by an entry made upon the records of that municipality. It will also be kept in mind that the statute did not go into effect until January 1, 1904. Ordinance No. 24,353, prescribing the kind of fender to be employed in street-cars having air-brakes and used in the City of Portland, was not to become operative until September 1, 1912, 47 days after the plaintiff's daughter was killed. From the time the statute referred to went into force until this ordinance became effective was 8 years and 8 months. How many street-cars having air-brakes were in use by the defendant when the ordinance became operative does not appear from a transcript of the testimony. On July 15, 1912, or the day preceding the injury complained of herein, 350 cars should have been equipped with fenders, as prescribed in section 1 of the ordinance. That number of cars should have been supplied with guards in 8 years, 6 months and 14

days from the time the statute went into effect. This was an allowance of more than eight days to each car in which to secure and attach the prescribed fender.

1. The power to substitute, in lieu of the guard recommended by the statute, another fender could be employed "whenever," in the judgment of the mayor and common council of Portland, it was deemed for the best interests of the inhabitants of that city. This grant of authority was continuing until it was employed May 11, 1911, by the enactment of Ordinance No. 23,259, which then went into effect directing the kind of apron required to be used in Portland on cars having air-brakes, and thereupon such municipal law became the rule governing the operation of such vehicles on the streets. No authority, however, was conferred to postpone the operation of that law, and the attempt to do so, as set forth in the ordinance, was *ultra vires* and void.

2. The car causing the death of Maxine Melba Rudolph not having been equipped at the time of the accident as commanded, its operation was a violation of the provision of section 1 of the ordinance, and, this being a breach of duty enjoined by law, the injury resulted from negligence *per se: Peterson* v. *Standard Oil Co.*, 55 Or. 511 (106 Pac. 337, Ann. Cas. 1912A, 625) ; *Morgan* v. *Bross,* 64 Or. 63 (129 Pac. 118) ; *Goodwin* v. *Rowe,* 67 Or. 1 (135 Pac. 171).

3. The motion for a new trial did not specifically state that there was no evidence received to sustain the verdict as to some material issue, and for that reason it is argued by defendant's counsel that an error was committed in setting aside the judgment. In *Smith Typewriter Co.* v. *McGeorge, ante,* p. 523 (143 Pac. 905), in referring to Section 548, L. O. L., it is said:

"Under the provisions of this statute, the right of a Circuit Court to set aside a judgment and grant a new trial can be exercised only when, in the trial of a cause an error has been committed which is so prejudicial to the defeated party that the judgment rendered against him would, if allowed to remain in force, be reversed on appeal. When the trial court, within the time allowed, discovers that such a mistake of law has been made, it may *sua sponte* or on motion correct the error by setting aside the judgment and granting a new trial, thereby avoiding the necessity of and the expense * * incurred by an appeal."

The case at bar comes within the rule thus announced, and, as there was no evidence received in respect to the matter stated by the court in its findings, the judgment was properly set aside.

The order brought up for review is affirmed.

AFFIRMED.

Mr. Chief Justice McBride, Mr. Justice Burnett and Mr. Justice Ramsey concur.