Argued October 15, affirmed November 24, 1914.

# GIGOUX *v.* YAMHILL COUNTY.*

### (144 Pac. 437.)

**Bridges—Injuries to Persons—Elements of Recovery—Liability of County.**

1. Under Section 6375, L. O. L., declaring that whenever any individual, lawfully traveling upon a highway or a bridge, part of a legal road, shall without contributory negligence on his part, and without knowledge of the defect, sustain injury by the defective condition of the highway or bridge, he may recover from the county, plaintiff must, as a condition to recovery, show that he was lawfully traveling upon the highway, that he was injured by a defect therein, that his own negligence did not contribute to the injury, and that he was ignorant of the defect.

**Bridges—Persons Lawfully upon—Injuries.**

2. Where the bridge upon which the injury to plaintiff's intestate occurred was part of the highway upon which such intestate was traveling, she was lawfully upon the bridge when she was hurt.

**Negligence—Degree of Care—Infants.**

3. An infant is required to exercise that degree of care to avoid personal injury which a child of his age, knowledge and mental capacity is reasonably capable of.

**Trial—Instructions—Errors.**

4. In an action for injuries to a traveler on a highway who stepped through a hole in a bridge, that portion of a charge, making the traveler's freedom from contributory negligence a condition of recovery, which informed the jury that if a person is absorbed in thought, having a right to presume that a highway and bridge is reasonably safe, he is not bound to direct his whole attention to the defects, is not erroneous, when taken in connection with other portions of the same charge informing the jury that a traveler has to exercise such care as an ordinarily prudent person will exercise.

**Highways—Traveler—Duty of Care.**

5. As it is the duty of the officers of a county to see that highways open for travel are reasonably safe, a traveler on a public road may rely upon the presumption that such officers have discharged their duty and, when addressed by a person in his rear, may turn his head toward the speaker to give attention to what is said.

**Bridges—Actions for Injuries—Evidence—Jury Question.**

6. In an action for the wrongful death of a child resulting from an injury received while crossing a defective bridge, the question of

---

*For the liability of counties for torts and negligence as to bridges, see note in 39 L. R. A. 33.

As to imputing the negligence of a parent to the child, see note in 17 L. R. A. 79.                                        REPORTER.

the child's contributory negligence *held* under the evidence for the jury.

**Death—Actions—Pleading—Theory of Action.**

7. In an action for the wrongful death of a child, due to an injury to her leg while upon a defective bridge, the answer of the county alleged that the injury, which was considered slight, was not treated by a physician, and that the parents of the child allowed her to play about in the usual manner, so that her clothing irritated the injury, which by reason of the filthy condition of her leg and clothing became infected. Counsel for the county stated, while cross-examining the child's mother, that they were trying the case upon the theory that the negligence of the parents was an element. *Held* that, as the court accepted that view, there was no error in excluding evidence of the unsanitary condition of the child's home offered on the theory that it was an intervening cause, particularly as the court charged that for plaintiff to recover the jury must find the injury on the bridge was the primary cause of the child's death.

> [As to aggravation of injuries by medical treatment, see note in 50 Am. Rep. 603.]

**Negligence—Imputed Negligence—Contributory Negligence of Parents of Deceased Child.**

8. In an action by an administrator to recover for the death of his intestate, a minor child, negligence of the parents of the child in failing to properly care for her after the injury is not imputable to the child.

> [As to imputed negligence, see note in 110 Am. St. Rep. 278.]

From Yamhill: WEBSTER HOLMES, Judge.

Department 1.    Statement by MR. JUSTICE MOORE.

This is an action by Alex Gigoux, as administrator of the estate of his daughter, Emma Gigoux, deceased, against Yamhill County, to recover damages for a personal injury which it is alleged caused her death. The defendant maintained as a part of a public highway a bridge which on September 21, 1912, had a hole in the planking about three feet long and three inches wide at one end and tapered to a point at the other end. On the day named Emma Gigoux, who was 10 years and one month old and as intelligent as children of that age, was walking with a sister, ahead of their mother and a young lady, across the bridge, when Mrs. Gigoux spoke to Emma, who, looking back, stepped

into the hole in the bridge, her left lower limb passing through the opening to the knee, causing abrasions of the skin on both sides of the leg. She was taken home, a short distance from the place of the injury, the limb washed with soap and warm water, the wounds bathed with peroxide, a mixture of glycerine and carbolic acid applied to the injured parts, and bandages placed thereon. The little girl was thereafter frequently bathed, clean clothing exchanged for that which had been worn, and the treatment referred to was repeated each morning for about ten days, when, incrustations having formed over the abrasions, it was supposed that the wounds were properly healing. In a few days, however, blood poison set in, whereupon physicians were called; but, they being unable to effect a cure, she died of septicæmia October 5, 1912. The complaint herein alleges the death of Emma, the appointment and qualification of the plaintiff as the administrator of her estate, the maintenance by the defendant on the public road of the bridge, the defect therein, the defendant's notice thereof, and the injury resulting therefrom, setting forth the facts in respect thereto in such a manner as to show the defendant's liability as specified in Section 6375, L. O. L. The answer denied most of the material averments of the complaint, and for a separate defense alleged, in effect: That Emma and her parents, prior to and at the time of the accident, had knowledge of the hole in the bridge. That the aperture extended transversely and was so narrow as to render it impossible for Emma to put her foot therein if she had been walking in the usual manner. That at the time she was moving sideway or backward and negligently stepped into the hole in the bridge. "(4) That in so slipping her foot into said aperture in said bridge the

said Emma Gigoux slightly scratched the skin on her ankle or lower portion of her leg, which scratch, however, was only slight, and was so regarded by the said Emma Gigoux and her parents, and no physician was called for prescribing for or treating said scratch for a period of ten days or more thereafter, during which time the said Emma Gigoux, with no proper treatment of said scratch, engaged in her usual play about the premises of her said parents, permitting her clothing to rub and irritate said scratch and other articles to come in contact therewith, and the said scratch was permitted to and did become unclean, dirty and filthy, and by reason of such neglect thereof and of the rubbing of the clothing of said Emma Gigoux upon said scratch and otherwise subsequently bruising, scratching and hurting the same, and of subsequent injuries received by said Emma Gigoux, and by reason of the dirty and filthy condition in which the said ankle and limb as well as other portions of her body was permitted to remain, and some ten days after the happening of the accident complained of, the limb of said Emma Gigoux became infected and sore, and same thereafter resulted in the ailment which caused the death of the said Emma Gigoux on October 5, 1912.'' For a second defense it is alleged:

''That said accident complained of by plaintiff is the result of negligence and want of care on the part of Emma Gigoux, contributed to on her part as to said accident as well as to any injury sustained or claimed to have been sustained thereby.''

The reply put in issue the allegations of new matter in the answer, whereupon the cause was tried, resulting in a judgment for the plaintiff in the sum of $1,000, and the defendant appeals.    AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. Roswell L. Conner* and *Mr. W. O. Sims.*

For respondent there was a brief over the name of *Messrs. McCain, Vinton & Burdett,* with an oral argument by *Mr. James McCain.*

Mr. Justice Moore delivered the opinion of the court.

1. This action is predicated on Section 6375, L. O. L., which reads:

"Whenever any individual, while lawfully traveling upon any highway of this state or bridge upon such highway, the same being a legal county road, shall, without contributory negligence on his part, and without knowledge upon his part of the defect or danger, sustain any loss, damage, or injury in consequence of the defective and dangerous character of such highway or bridge, either to his person or property, he shall be entitled to recover of the county in which such loss, damage, or injury occurred, compensatory damages, not to exceed the sum of $2,000 in any case by an action in the Circuit Court of such county, or in a Justice's Court therein, if the amount of damages sued for shall not exceed the sum of $250.00."

It is contended that Emma Gigoux went upon the bridge where the aperture was in plain view, and that without observing where she was going she turned her head backward to speak to her mother, and in doing so stepped into the hole in the planking and was injured, and since the testimony conclusively showed that the plaintiff's intestate was guilty of contributory negligence, her conduct precludes a recovery herein, and, such being the case, an error was committed in refusing to grant a judgment of nonsuit.

It appears from the testimony that Emma was crossing the bridge in advance of her mother, who remarked

that since services were to be held in the church on the next day new stockings would have to be procured for this daughter, whereupon Emma, turning her head to reply, stepped into the aperture in the plank covering and was hurt.

In parts of its charge, to which no exceptions were taken, the court so completely submitted to the jury the question as to the contributory negligence of Emma Gigoux upon this subject, that quotations from the instructions will be made, to wit:

"Now, the four elements which the plaintiff is bound to establish by a preponderance of the evidence are these: (1) This deceased child must have been lawfully traveling upon the highway. (2) She must have received the injury by reason of a defect in this highway. (3) Her own negligence must not have contributed to such injury. (4) She must have been ignorant of the defect at the time of the injury. * * It is the law that a person traveling upon a public highway has a right to presume * * the highway is in a reasonably safe condition. * * And that presumption prevails in this case, that the child had a right to presume that the bridge was in a reasonably safe condition at the time she was injured. * * As to whether she was negligent or not, you have heard testimony as to her turning sideways. You have heard testimony as to the size and condition of the defect—that hole. As to whether that constituted negligence on her part, which contributed to her injury, is for you to determine, and in that connection the law is that a person traveling upon a highway, or a bridge, or a sidewalk, or any other place where pedestrians travel, does not have to exercise every care and precaution excepting only as an ordinarily prudent person will necessarily have to; and if a person is absorbed in thought having a right to presume that it is reasonably safe, he is not bound to be directing his sole and whole attention to the discovery of defects. This is not required of any person. In this connection you will consider the age

of this deceased child and also her mental capacity. You have heard the testimony, which testimony, tended to show she was of average mentality to say the least. And you have a right to take into consideration whether a person of her age and mental capacity acted as an ordinarily prudent person of that age and mental capacity would have acted at the time and place and under the circumstance's, and determine whether or not she acted as an ordinarily prudent person and used that degree of care that an ordinarily prudent person of her age and mental capacity would have used at the time. And if you find by a greater weight of the testimony she did so act, why then she would not be negligent.''

2. The legal principles thus announced are supported by the authorities. Thus the four elements referred to, which the plaintiff was required to establish, are conditions precedent to a recovery in an action of this kind: Section 6375, L. O. L.; *Bailey* v. *Benton County,* 61 Or. 390 (111 Pac. 376, 122 Pac. 755). The statute makes it unlawful for any person to cross a public bridge with a portable engine without placing plank beneath the wheels of the machine to protect the structure: Section 6337, L. O. L.; *Jones* v. *Union County,* 63 Or. 566 (127 Pac. 781). See the notes to this case in 42 L. R. A. (N. S.) 1035. Fast driving over any bridge or overloading it by driving too many head of cattle, horses or mules thereon are also unlawful acts: Section 6375, L. O. L. The bridge where the injury occurred in the case at bar being a part of the highway, the plaintiff's intestate was lawfully traveling thereon when she was hurt.

3. In speaking of a deduction which the law expressly directs to be made from particular facts with respect to the rights of a traveler on a public road, an author observes:

"He walks, as it has been said, somewhat too strongly 'by a faith justified by law,' and has a right, in the absence of anything to the contrary, to presume that the highway is reasonably safe for travel": 2 Elliott, Roads & Streets (3 ed.), § 817.

In a note to the text, the correct rule is stated as follows:

"The presumption does not warrant the omission of such care as ordinary prudence requires, and the statement quoted is correct only in a limited sense."

An infant is required to exercise that degree of care, in order to avoid personal injury, that the testimony shows the child reasonably capable of exercising, depending upon his age, knowledge and mental capacity: *Dubiver* v. *City Ry. Co.*, 44 Or. 227 (74 Pac. 915, 75 Pac. 693, 1 Ann. Cas. 889); *Mundhenke* v. *Oregon City Mfg. Co.*, 47 Or. 127 (81 Pac. 977, 1 L. R. A. (N. S.) 278); *Westman* v. *Wind River Lumber Co.*, 50 Or. 137 (91 Pac. 478); *Russell* v. *Oregon R. & N. Co.*, 54 Or. 128 (102 Pac. 619); *Thornton* v. *Portland Ry., L. & P. Co.*, 63 Or. 478 (128 Pac. 850)?

4, 5. What the court said about a person being absorbed in thought might, if standing alone, seem to carry the rule too far, for a person must give some attention to the place over which he passes in order to observe patent defects if any exist therein. When, however, the language referred to is read in connection with the presumption which was held applicable, it is believed that no harm resulted.

It is incumbent upon the officers of a county, who are charged with a performance of that duty, to see that the highways which are open for travel are reasonably safe for that purpose. Invoking the disputable presumption that official duty has been regularly performed, a traveler on a public road when

addressed by another person can properly give attention to what is said and may turn his head toward the speaker for that purpose. Such heed, however, is not being "absorbed in thought," which phrase usually signifies an occasional aberration of intellect, which, momentarily, precludes all attention. No exception was taken to the expression "absorbed in thought," nor could the jury have been misled by its use, for Mrs. Gigoux's remark that Emma should have a new pair of stockings evidently pleased the little girl, and her attention must have been aroused with pleasurable expectation.

6. The testimony as to the age, experience and mental capacity of the deceased shows that the question of her alleged contributory negligence was properly submitted to the jury, and, this being so, no error was committed in denying the motion for a judgment of nonsuit.

7. It is maintained that an error was committed in not permitting the defendant to offer testimony in support of the alleged unsanitary condition of the plaintiff's home at the time of the accident and during the last illness of the deceased. It is argued that paragraph 4 of the answer, hereinbefore set forth, avers a new and intervening cause, and that in refusing to receive evidence in relation thereto the defendant was prejudiced. It is believed that the pleader, in the part of the defense referred to, intended to charge contributory negligence on the part of the parents of Emma Gigoux in failing to call a physician when she was hurt, in permitting the girl's clothing to irritate the wounds, and in not exercising greater care in respect to the alleged unsanitary conditions of the home, whereby the little girl's death resulted, and not particularly to aver an independent intervening cause of her death. As tend-

ing to uphold the view we entertain respecting the part of the answer to which attention has been called, the defendant's counsel undertook to show that the little girl's wounds may have been infected by germs when being bathed, by inquiring of Mrs. Gigoux on cross-examination: "Did you ever boil the basin, or disinfect it in any way before you put water into it?" An objection to the question having been interposed, the counsel conducting the examination said: "We are trying this case upon the theory that the negligence of the parents would be an element." Other questions and remarks upon this subject of similar import induce the conclusion that the averment referred to was intended to set forth contributory negligence on the part of the parents, and hence no error was committed as alleged, and that the jury were not misled by excluding such testimony. In support of this conclusion the court charged as follows:

"And also you must find, before you can find for the plaintiff, by greater weight of the testimony, that this injury which she received, when she fell through this hole in the bridge, was the primary cause of her death."

8. It is insisted that an error was committed in refusing to receive evidence of the alleged negligence of the parents of Emma Gigoux as to their care and treatment of the little girl after she was injured. In *Bradshaw* v. *Frazier,* 113 Iowa, 579 (85 N. W. 752, 86 Am. St. Rep. 394, 55 L. R. A. 258), where the death of the plaintiff's intestate resulted from exposure occasioned by the execution of a writ of removal sued out by the defendant, it was held that the fact that the intestate's parents were guilty of negligence in caring for the intestate after the exposure constituted no defense to an action for

abuse of process.   In *Ploof* v. *Burlington Traction Co.,* 70 Vt. 509 (41 Atl. 1017, 43 L. R. A. 108), in an action in which an administrator was seeking to recover damages for the defendant's negligence resulting in the death of a minor child, for the benefit of the child's estate, it was ruled that the negligence of the parents contributing to the accident could not be imputed to the child.   To the same effect, see *Macdonald* v. *O'Reilly,* 45 Or. 589 (78 Pac. 753).   No error was committed in this respect.

Other exceptions are relied upon, but, believing them unimportant, the judgment should be affirmed, and it is so ordered.                                        AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE RAMSEY concur.