## CHARLES BRANDENBERG v. EQUITY CO-OPERATIVE EXCHANGE.[1]

### July 18, 1924.

### No. 23,972.

**Order of proof.**

1. The order of proof was for the .trial court, and its rulings present no reversible error.

**Question for jury whether manlift in elevator is attractive nuisance for children.**

2. Whether a manlift in a grain elevator was so accessible and attractive to children as to come within the doctrine of the "turntable cases" was for the jury. The test of liability for the maintenance of a dangerous appliance or attractive nuisance to children is not so· much *its location* at or near a public place as its easy accessibility to children and the knowledge of the owner that they resort to it for play.

**Contributory negligence of boy question for jury.**

3. There was evidence from which the jury could find an implied invitation or permission for the boy injured to use the lift for amusement, and, such being the case, his contributory negligence in its use was a jury question.

[1]Reported in 199 N. W. 570.

**Question for jury whether boy was an invitee.**
    4. The pleadings warranted a submission of the case not only upon the attractive nuisance theory, but also upon the one that the injured boy was an invitee in his attempted use of the lift.

**Denial of motion to strike out evidence correct.**
    5. Medical testimony justified the denial of the motion to strike certain evidence from the case.

**Refusal to instruct proper.**
    6. No error is found in the refusal to give requested instructions.

Action in the district court for Ramsey county to recover $5,000. The case was tried before Boerner, J., who when plaintiff rested denied defendant's motion to dismiss the action and at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $121 in favor of Charles Brandenberg and for $2,000 in favor of Charles Brandenberg as father of Paul Brandenberg, minor. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*C. C. McElwee* and *J. G. Stirn*, for appellant.

*Thomas D. O'Brien* and *Edgerton & Dohs*, for respondent.

HOLT, J.

The appeal is from an order denying defendant's motion in the alternative for judgment non obstante or a new trial, after verdict for plaintiff.

The action is by the father in behalf of his son, Paul, a minor, to recover for injuries sustained by Paul when a manlift in defendant's grain elevator at Sanborn, North Dakota, fell with him. The recovery was based on the theory that the lift was an attractive and dangerous plaything for children and also that defendant's manager, Ferhagen, in charge of the elevator, negligently permitted children to operate the same, knowing it to be dangerous and out of repair.

The grain elevator is of the ordinary type common to small villages. A covered driveway with doors leads to the scale and unloading platform. On one side of the driveway is the office, on the other the cleaning room and elevator proper, where, about 2 feet from the unloading platform, is the manlift, its floor when fastened down being about 6 inches above that of the main elevator floor. The floor of the lift is about 3 feet square. No railing or cage surrounds it. Bolted to the floor frame upon two of its opposite sides are four 8-foot 2 x 4 posts, each post being fastened about one foot from the corner of the floor. At the top of the post is a horizontal beam 3 feet long. To this beam the posts are bolted. The beam being only about 4 or 6 inches thick, the posts, which stand about 2 feet apart at the floor, incline towards the beam. A heavy rope, attached to the center of the beam passes over a pulley at the top of the elevator and is fastened to a boxed-in counterweight, heavy enough to raise the lift with a large man thereon. This counterweight is the motive power. A smaller rope fastened at the top and bottom of the elevator, passing through holes in the beam and floor of the lift, is used to start the lift, especially if the load is about as heavy as the counterweight. When the lift is at rest on the elevator floor it is held down by a spring board which hooks over an edge of the floor of the lift, the lower end of the board being bolted to beams under the floor of the elevator. Near the ends of the beam of the lift as well as near the floor thereof are grooves into which fit the uprights or guides running from the bottom of the elevator to the top. From the floor of the lift a bolt projects about 2 inches upward. This operates a brake which holds the lift securely to the guides. To move the lift the operator must step on this bolt and at the same time, with the other foot, kick or push off the spring board hook, and give the small rope a pull. Taking the foot off the bolt at once sets the brake and stops the lift. There is also a safety device near the beam designed to operate in case the rope attached to the counterweight parts. This device was out of order at the time Paul was injured. The lift does not run in a shaft. It is open on all sides to the top, 51 feet, where it passes through a floor opening. From

this description it should appear that there is nothing to protect a person, riding on the lift, from falling off in case of a sudden jar except by holding onto the posts mentioned.

Paul was 13 years and 4½ months old when the accident happened. A boy 2 years younger lived with Ferhagen and at times assisted him with work. Of course, his presence drew other boys to the elevator, among them Paul and his younger brother. On the day in question the Ferhagen boy, Paul, and his brother had met, and when near the elevator started running towards it. Paul, in the lead, ran into the elevator, jumped on the lift and started it. His weight being light, the lift went up with such speed that it struck the bumper at the top with such force that the large rope attached to the counterweight broke, and, the safety device above mentioned being out of repair, the lift fell. In the fall Paul was injured. As to the above facts there is no dispute.

The jury could also find from the evidence that defendant's manager, Ferhagen, knew that the boys frequently used the lift in play; that he knew it was extremely dangerous for them to do so; and that, nevertheless, he did not object to such use, provided no teams were in the driveway to be frightened. In fact, Paul testified that Ferhagen sent him up once to oil some bearings at the top of the elevator, and we do not find that fact denied. To be sure, there is testimony from Ferhagen that the only two or three times he found the boys tampering with the lift he told them not to do so or they would be hurt, but this did not conclude the jury, even though it seems to us the inference from the boys' testimony is quite strong that they knew the lift was forbidden them.

Error is assigned because the court permitted the reception of evidence relating to the construction and condition of the lift and its safety appliances before the introduction of proof tending to show defendant's responsibility towards the injured boy. This was a mere matter of order of proof and within the discretion of the trial court. There was no impropriety in showing that Paul had done some little work in the elevator 3 or 4 weeks previous to the accident. Nor was there error in refusing to strike out, as not within the issues, the testimony of Paul that his purpose

in going to the elevator when the injury occurred was to get pay for work he had recently done. The complaint alleged that he came to the elevator with the knowledge and consent of defendant. Under this allegation, evidence from which an implied invitation might be found was properly received.

The next contention argued by defendant is that it was entitled to a directed verdict in its favor. We need not consider the refusal to dismiss the case when plaintiff rested, because that ruling should not result in a reversal, if there was no error in denying the motion for a directed verdict. Defendant maintains that the doctrine of the "turntable cases" does not carry the instant case to the jury. It is said the lift was in a building and not in the open to attract children as in Keffe v. Milwaukee & St. Paul Ry. Co. 21 Minn. 207, 18 Am. St. 393; Twist v. Winona & St. Peter R. Co. 39 Minn. 164, 39 N. W. 402, 12 Am. St. 626; O'Malley v. St. Paul, M. & M. Ry. Co. 43 Minn. 289, 45 N. W. 440; Berg v. B. B. Fuel Co. 122 Minn. 323, 142 N. W. 321.

Had this lift stood in the open adjacent to a street there could be no question as to its being an attractive and dangerous nuisance to children. But the jury were justified in finding that its location in this elevator, adjacent to a driveway generally open, was as accessible to the playmates of the Ferhagen boy as if it had stood outside. While the doctrine of the turntable cases is specially applicable where the attractive nuisances and dangerous appliances are upon public streets, as stated in Znidersich v. Minnesota Utilities Co. 155 Minn. 293, 193 N. W. 449, it does not necessarily depend upon whether the dangerous instrumentality is kept in a building or outside, but rather upon its attractiveness and easy accessibility to children. The main basis for a recovery here under the turnable doctrine was the negligence the jury could find in permitting the boys to make use of this admittedly dangerous lift. It was that conduct which made it as free and accessible to the boys as if it had stood in the street, and not any requirement that where it was it should have been so fastened that boys could not start it. In a business where machines or other mechanical appliances are operated, it is not feasible to keep them under lock and key. We

think no negligence can be found in the manner this lift was secured when not in use, nor in its construction. It is only upon a finding that, with knowledge of the danger to the boys, defendant's manager suffered them to use or play with the lift, that actionable negligence could be predicated. Such negligence also occasioned the negligence in respect to the rope and safety device to operate to cause the injury. If the boys were to be permitted to run the lift, defendant owed them ordinary care so that from want of proper maintenance or repairs it might not become in the nature of a pitfall or hidden danger to them. The parting of the rope testifies to neglect. But even that would have produced no harm if the safety device had been maintained in order.

It is urged that Paul was guilty of contributory negligence as a matter of law, and defendant should have judgment. We think this was a jury question. The jury were charged that if Paul was a trespasser there could be no recovery, nor if he ventured upon the lift in spite of a warning not to do so, nor if he was a mere licensee, but only in case he used the lift with the permission, consent or at the invitation of defendant's manager, and then only if defendant failed to use ordinary care to keep the lift in a reasonably safe condition. So, under the manner in which the case was submitted, the question of contributory negligence could not arise unless the jury found that Paul had the right by permission or implied invitation to operate the lift. Of course, if he was rightfully attempting to use the lift, it was properly left to the jury to say whether or not he did so with due care, considering his age and experience.

It is also asserted that the court erred in submitting the case as indicated in the preceding paragraph, and not on the turntable doctrine exclusively, as not within the pleadings. The complaint directly alleges that defendant negligently maintained the lift without safety appliances, and with knowledge that Paul was incompetent to operate the same, wrongfully and negligently permitted him to do so. The pleading embraced the issues submitted, and the tenth request was properly refused.

Defendant moved to strike all evidence as to the lift being an attractive nuisance, after Paul testified that he had no recollection

of his movements or intentions from the time he started to run for the elevator, but that prior to that time his intention was to go there to collect his pay and not to use the lift. This was denied, and error is assigned. There was medical testimony from which the jury could find that the blow sustained by Paul effaced his memory as to his thoughts or acts for a short period prior to the injury. This justified the ruling.

An instruction was requested that if the jury "find as a fact that the boy went to the elevator to collect money claimed to be due him, you are instructed that he was then strictly confined to the scope of his license to be on the premises for that purpose and your verdict must be for defendant as he had no right to step aside and use the manlift." The requested instruction ignores the "turntable" theory altogether, and also the pleading and proof in respect to an implied invitation to use the lift. We discover no error in the refusal to give other instructions asked.

The order is affirmed.