Argued January 27, affirmed March 16, rehearing denied April 20, 1926.

# SADIE COOPER *v.* NORTH COAST POWER COMPANY ET AL.

## (244 Pac. 665; 245 Pac. 317.)

**Appeal and Error—Facts Tried by Jury are not to be Re-examined by Court if Plaintiff's Case is Supported by Competent Evidence (Const., Art. VII, § 3c).**

1. If plaintiff proves material averments of complaint by competent evidence, no court can re-examine facts tried by jury unless it can affirmatively say that there is no evidence to support verdict, as provided by Constitution, Article VII, Section 3c.

**Trial.**

2. Direction of verdict or granting of motion for nonsuit takes place of demurrer to evidence under common law.

**Trial—Court Does not Weigh Evidence or Determine Credibility of Witnesses in Ruling on Motion for Directed Verdict, and Every Reasonable Inference is Made in Plaintiff's Favor.**

3. In disposing of defendant's motion for directed verdict, court does not weigh evidence nor determine credibility of witnesses, and every reasonable inference arising from testimony is made in plaintiff's favor.

**Electricity—Negligence and Contributory Negligence Held for Jury in Action for Child's Death Caused by Contact With Electric Wires (Const., Art. VII, § 3c).**

4. In action for death of minor son, caused by coming in contact with electric wires of defendant company strung over a tree on picnic grounds, negligence and contributory negligence *held* questions for jury, in view of Constitution, Article VII, Section 3c, precluding review of facts tried by jury unless court can affirmatively say there is no evidence to support verdict.

**Electricity—Electric Company is Under Duty to Guard Against Contingency Reasonably Anticipated.**

5. Electric power company is under duty, in construction and maintenance of power line, to provide such protection as will guard against any contingency that may be reasonably anticipated.

**Electricity—Child Electrocuted Held to have Right to Climb Tree on Premises Used for Picnics.**

6. Where private tract, over which electric company had right to stretch its wires, was used by public generally for picnicking,

---

2. See 26 R. C. L. 1067.

5. Duty, in stringing electric wires, to guard against danger to children, see notes in 11 L. R. A. (N. S.) 449; 25 L. R. A. (N. S.) 1220; 17 A. L. R. 833. See, also, 9 R. C. L. 1208.

and unsigned trespass notice on shack on premises was aimed only against electric company, minor child .had right to picnic on land and climb tree· over which electric wires causing his death, were stretched.

**Electricity—Electric Company Should Anticipate General Probability of Danger, Though not Precise Way in Which Accident Might Occur.**

7.   If there is a general probability of danger from construction and maintenance of power lines, company is under duty to anticipate it, and it is not necessary it should know precise way.

**Negligence.**

8.   Degree of care required of child is graduated on knowledge, discretion, maturity and experience.

**Negligence—Contributory Negligence Question for Jury, Though Facts are Undisputed if Reasonable Minds Might Differ.**

9.   Contributory negligence as a matter of law is established only where no material fact is left in doubt and no other reasonable inference can be drawn from proof by jury, and where facts are not disputed, question remains for jury, if reasonable minds might draw different conclusions.

Electricity, 20 **C. J.,** p. 350, n. 54, p. 351, n. 57.

From Columbia: J. A. EAKIN, Judge.

Department 2.

This is an appeal from a judgment in favor of plaintiff for the recovery of damages in the sum of $4,000, on account of the death on May 24, 1922, of Walter Cooper, her only son, a boy of twelve years, by coming in contact with uninsulated electric wires belonging to the defendant, North Coast Power Company, a corporation.

The defendant corporation owns and operates an electric power line between the towns of Goble and Rainier, Columbia County, Oregon, and, in such operation, its codefendant, George Ringle, as its lawful representative, at all times herein mentioned had sole charge and control of the construction and maintenance of the line, and of the manufacture, trans-

8.   See 20 **R. C. L.** 124.

mission and distribution of electricity thereby. On May 24, 1922, the date of the accident above referred to, the defendant corporation was engaged in the manufacture and transmission, by means of its power line, of electricity of a high and dangerous voltage.

Plaintiff avers that, at the time of the construction of the power line of the corporation, there was standing on land known as the "Newsome Tract," which tract was frequented by the public, a large yew tree with broad, outspreading branches; that, in the erection of the power line, the defendants carelessly constructed the line in such manner that three of its electric wires passed on a direct line with the tree and over the roof of an abandoned shack that had been constructed underneath its branches; and that, in order to give clearance to the wires, the defendant company topped the above-mentioned tree immediately under the electric wires, leaving a stump two feet and eight inches in diameter at the top, sixteen feet and four inches high, and with large, spreading branches reaching out from the body of the tree as low as six feet from the ground. She avers what she claims was the duty of the defendants in reference to the construction and maintenance of their lines, and their negligence in the performance thereof; that the power lines, tree and shack were attractive to children, "and was a veritable death trap and of grave danger to the members of the public generally"; that, on May 24, 1922, Walter Cooper, in company with about twenty-five other boys and girls of similar age, pupils of the Rainier Public School, together with their teacher and a patron of the school, went upon the "Newsome Tract," as the public and residents of Rainier were accustomed to do,

for the purpose of picknicking and spending the day in childish sport and games.

"That, immediately upon entering said grounds, the deceased, Walter Cooper, together with a number of other boys of like age, attracted by said yew tree and its unusual appearance, position, accessibility and ease of being climbed, entered the branches thereof and climbed to the top; that the electric wires aforementioned were not easily discernible, and that the deceased * * was ignorant of the presence of said wires, and * * was ignorant of the character and danger of electric currents and electric wires and did not know nor appreciate the presence nor danger of said electric wires and the electric current being transmitted thereby."

The plaintiff alleges that, upon gaining the top of the stump of the yew tree, the lad came in contact with the defendant company's electric wires, and, as a result, was instantly killed. She avers that her husband, the father of Walter Cooper, is dead; that the boy would have labored and earned until he attained his majority, and that she would have been entitled to receive such earnings.

The defendant corporation, answering, admits the ownership and construction of the power line, its location across the "Newsome Tract," and over the abandoned shack and yew tree stump; and for a further and separate defense, it avers that Walter Cooper, in company with other boys and girls, went upon the Newsome tract of land without any right or authority and without the knowledge or consent of the defendant, or of Mary Newsome, the owner of the tract of land; that Walter Cooper and other young people, in company with him, were warned and instructed not to go near the electric wires of the defendant or to come in contact therewith, for the

reason that such wires carried a dangerous voltage of electricity; that the lines were constructed and maintained carefully, and that the boy's death was caused solely through his own negligence "in going upon said premises and right of way of the defendant, and in disregarding the warning not to touch and come in contact with, or get near the wires of the defendant, and in climbing up the yew tree and touching or coming in contact with one of the defendant's wires." George Ringle filed a similar answer.

At the conclusion of the plaintiff's evidence, the defendants requested the court, peremptorily, to instruct the jury to return a verdict in their favor upon the ground that negligence on the part of the defendant was not shown, and that the evidence showed that the deceased was guilty of contributory negligence. The motion was denied. Both parties rested. On appeal the defendants assign a number of errors, but rely chiefly upon the alleged insufficiency of the evidence to support the plaintiff's cause.

AFFIRMED.

For appellant North Coast Power Company there was a brief over the name of *Messrs. Wilbur, Beckett, Howell & Oppenheimer,* with an oral argument by *Mr. H. B. Beckett.*

For appellant George Ringle there was a brief over the name of *Messrs. Hayden, Langhorne & Metzger,* with an oral argument by *Mr. F. D. Metzger.*

For respondent there was a brief and oral argument by *Mr. Glen R. Metsker.*

BROWN, J.—1. The motion filed by defendants challenges the sufficiency of plaintiff's evidence to take the question of their alleged neglect to the jury. They further assert, in effect, that the evidence ad-

duced by plaintiff establishes the negligence of the deceased boy in contributing to the injury sustained by him. Before a recovery can be had, the plaintiff, by some competent evidence, must prove the material averments of her complaint. When the plaintiff has met that requirement, notwithstanding any view we may entertain regarding the probative weight of the testimony, we are required to heed this imperative direction of our fundamental law:

"In actions at law, * * the right of trial by jury shall be preserved, and no fact tried by a jury shall otherwise be re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict." Section 3-C, Art. VII, Or. Const.

2, 3. With all due deference to the constitutional command, the motion presents a difficult question for determination. The direction of a verdict, or the granting of a motion for nonsuit, takes the place of a demurrer to the evidence under the ancient common-law rules: *Herrick* v. *Barzee,* 96 Or. 357 (190 Pac. 141), and local citations; 2 Thompson on Trials (2 ed.), § 1524; 6 Am. & Eng. Pl. & Pr. 692. In the disposition of this question, we must adhere to the rule that the court does not weigh the evidence nor determine the credibility of the witnesses. For the purpose of the motion, the witnesses are entirely credible, and speak nothing but the truth. Furthermore, in considering this motion, every reasonable intendment and every fair and legitimate inference which can arise from the testimony of record must be made in favor of the plaintiff: *Farrin* v. *State Industrial Acc. Com.,* 104 Or. 452 (205 Pac. 984), and local citations.

At the time of his death, Walter Cooper was of the age of twelve years and twenty days. He was a

well-developed boy, in good health, and of average intelligence. He weighed ninety-six pounds and his height was four feet eleven inches. On May 24, 1922, the day of the accident, the boy, in company with his teacher and certain other pupils of the Rainier public school, gathered for picnic purposes on the tract known as the "Newsome Tract," a body of five or six acres of brush and timber lands situate within the corporate limits of the town of Rainier and between the Columbia River Highway and the Spokane, Portland & Seattle Railroad, about one and one-half acres of which were cleared. The tract had been partially inclosed by a fence in former times, but the fence had fallen into disrepair. On one side, the land had been inclosed by a brush fence only. In the clearing near one edge that bordered upon the highway stood a lone yew tree which, before being topped by the defendants, had attained the height of fifty feet and bore many widespreading branches. After the tree had been cut down to a stump sixteen feet and four inches in height, there still remained many widespreading branches, and, being especially limbed for climbing, this stump was very attractive to children. In the vicinity of the tree was a brook where flowed an exceptionally good quality of drinking water. Near the tree, and partially covered by some of its branches, was a small uninhabited shack with a lean-to. By reason of the attraction afforded by the shade and water, and the beauty of the surroundings, the grounds were used by the public for camping and picnics. It is shown by the testimony that, from time to time, many persons gathered there. At the time the boy was injured, the place had been supplied with a "camp-stove, table and benches." Elizabeth Hinebaugh, the teacher, testified that the

"Newsome Tract" was "a very pretty place, near the town, * * close enough to the school so the teachers could get back for the afternoon session."

Upon their arrival at the picnic grounds the school children scattered in pursuit of various sports. Walter Cooper and some of the others took hold of a limb of the yew tree, swung themselves upon the roof of the shack, and from there entered the branches growing out from the tree. Walter climbed to the height thereof, where, in some unknown manner, he came into contact with the defendant company's electric wire carrying 6,600 volts of electrical energy and was instantly killed.

There is no evidence, direct or circumstantial, tending to show that Walter ever was warned, or knew of the danger of the situation, or that he ever knew that the wires were uninsulated or were located in the vicinity of the tree. Nor is there any evidence tending to show that he ever touched the wires with his hands or purposely came in contact with the wires. However, he bore a mark upon his neck, the cap he wore on that occasion was burned, and his legs bore evidence of an electric shock.

Charles Davis testified that he was acquainted with the premises known as the "Newsome Tract"; that a day or two after the accident he went there for the purpose of examining into the condition of the same. He further testified:

"There was very little fencing. On the side next to the highway it was brush and boards; there was an open space from the cabin to the highway, steps part of the way, an open space, no fencing at all."

In regard to the brush fence, he testified:

"Just natural growth of scrub brush; some brush had been cut and laid down.

"Q. Other than the steps from the highway down to the house was there any other trails or road that led from the highway?

"A. Yes, sir, there is a trail went through the place.

"Q. From where to where?

"A. From Rainier, out to the highway. Since then I have traveled it a good many times. * * It goes through there right by the tree and house.

"Q. Was there any other trail or road leading into the tract?

"A. There is a trail comes through from the railroad; a board put across to the bank; people walk from the railroad up past this place."

The power line was constructed in 1920. The witness John Crank testified that he had been a resident of Rainier for fifteen years and was familiar with the character and the occupancy of the Newsome tract. Among other things, he swore that:

"I was on there every week or so, and that was a near way home; generally go through the 'Newsome' place. * * "

Speaking of campers on the premises, he said:

"I have seen them there fifty times, I suppose, before I worked at Prescott. * *

"Q. Where would they be with reference to this house and tree?

"A. * * There is a little distance between the tree and the edge of the woods where the stream goes down. Generally see them there, sometimes three or four bunches."

Further testifying as to campers, the witness said: "I have seen four or five fires at one time."

4. There is some testimony in the record to the effect that the power line was constructed and has been maintained by defendant George Ringle for and as a representative of his codefendant, North Coast

Power Company, as alleged, and that, as a representative of such company, he cut or caused the yew tree to be topped and suspended the wires of the power company across the shack and over the top of the yew tree stump. The testimony further shows that the defendant Ringle, in behalf of the company, has inspected the lines about twice every two months since its construction. A necessary conclusion from the record is that there is some testimony that the defendants knew, or ought to have known, that there was some danger in the attraction to children arising out of the construction and maintenance of its power line over the yew tree stump on the Newsome premises, and should have taken some precaution for their protection. In view of the foregoing constitutional provision, we hold that the record supports the verdict and the holding of the trial court.

The trial court in denying defendants' motion for a directed verdict followed the doctrine announced by a leading case to the effect that an electric company must anticipate that boys will climb trees and may be injured by uninsulated wires carrying dangerous currents of electric energy: *Temple* v. *McComb City Electric Light & Power Co.,* 89 Miss. 1 (42 South. 874, 119 Am. St. Rep. 698, 10 Ann. Cas. 924, 11 L. R. A. (N. S.) 449). Among the cases to similar effect are: *Williams* v. *Springfield Gas etc. Co.,* 274 Mo. 1 (202 S. W. 1); *Benton* v. *North Carolina Public Service Co.,* 165 N. C. 354 (81 S. E. 448); *Mullen* v. *Wilkes-Barre Gas etc. Co.,* 229 Pa. 54 (77 Atl. 1108); *Sweeten* v. *Pacific Power etc. Co.,* 88 Wash. 679 (153 Pac. 1054); *Godfrey* v. *Kansas City Light & Power Co.,* 299 Mo. 472 (253 S. W. 233); *Thompson* v. *Slater,* 197 Mo. App. 247 (193 S. W. 971); *Laurel Light & Ry. Co.* v. *Jones,* 137 Miss. 143

(102 South. 1); *Wolf, Admr.,* v. *Ford, Recr.,* 7 Ohio App. 461. See, also, Section 412, Curtis on The Law of Electricity, and 20 C. J. 353.

Among the many cases cited and relied upon by the defendants to the contrary are: *McCaffrey* v. *Concord Electric Co.,* 80 N. H. 45 (114 Atl. 395, 17 A. L. R. 813); *Wetherby* v. *Twin State Gas & Electric Co.,* 83 Vt. 189 (75 Atl. 8, 21 Ann. Cas. 1092, 25 L. R. A. (N. S.) 1220); *Mayfield Water & Light Co.* v. *Webb,* 129 Ky. 395 (111 S. W. 712, 130 Am. St. Rep. 469, 18 L. R. A. (N. S.) 179); *Johnston* v. *New Omaha Electric Light Co.,* 78 Neb. 27 (113 N. W. 526, 17 L. R. A. (N. S.) 435); *Graves* v. *Washington Water Power Co.,* 44 Wash. 675 (87 Pac. 956, 11 L. R. A. (N. S.) 452).

5. It was the duty of the defendants in the construction and maintenance of the power line to provide such protection as would guard against any contingency that was reasonably to be anticipated. From a note in *Temple* v. *McComb City Electric Light & Power Co.,* 89 Miss. 1 (42 South. 874, 119 Am. St. Rep. 698, 10 Ann. Cas. 924, 11 L. R. A. (N. S.) 449), we quote the following language that seems quite pertinent to the cause at issue:

"As to the duty to guard against danger to children in placing electric wires, no rule can be enunciated that would be accepted by all courts. As in the 'turntable' cases and those involving other 'attractive nuisances,' the authorities are in irreconcilable conflict. It would seem, however, that reason and humanity, alike, support the rule laid down in the above case that those dealing with such an extremely dangerous agency as electricity should, in stringing their wires in places where it is reasonably probable that children will go, be charged 'with the very highest degree of skill and care' to protect the children

from injury in the vicinity of such places, even though they may be trespassers.''

See, also, 20 C. J. 353.

6. However, we think that the decedent had a lawful right to go upon the Newsome land and to climb the tree; that it was not the property of the defendant company and therefore, so far as the decedent was concerned, he had a clear right to be just where he was at the time he met his death: *Wolf, Admr.,* v. *Ford, Recr., supra; Turnidge* v. *Thompson,* 89 Or. 637 (175 Pac. 281). In the latter case, Joseph P. Turnidge was killed while traveling over a field owned by Amos Fuqua. A number of trespass notices had been posted upon the premises, reading:

"We, the undersigned, do hereby forbid any trespassing or hunting on our premises. This means you."

The field was inclosed, and the trespass notices were duly signed. During that trial, one of the signers of the notice testified that the notice

"never applied to our neighbors, never seemed to me."

In discussing the question as to whether or not the deceased Turnidge was a trespasser at the time he was killed, this court, speaking through Mr. Justice HARRIS, said:

"It is true that trespass notices were posted on the premises and we think decedent should not be deemed a trespasser for the reason that neighbors had been accustomed to cross the Fuqua property as a short cut out to Willamina; and, moreover, Leslie did not intend that the notices 'applied to our neighbors.' "

In the case at bar, an unsigned trespass notice appeared upon the shack. The defendants direct attention to that notice. But Ira Newsome, Mrs. New-

some's son, testified that he had posted the notice as his mother's agent for the purpose of notifying the electric company to keep off the premises. The testimony shows that the company had invaded the Newsome holdings as trespasser, but afterwards acquired an easement to set their poles and construct their line over the premises. And the witness also testified that the notice had no application to others than the defendant company.

A case much in point is *Wolf, Admr., v. Ford, Recr.,* 7 Ohio App. 461. George Wolf, plaintiff's decedent, eleven years of age, while engaged in sport with other boys, climbed into a shade tree in front of the property of one William Schweier, located on a public street, between the sidewalk and curbing, in Mansfield, Ohio. Some of the limbs of the tree were within four or five feet of the ground. On August 13, 1915, an electric light wire belonging to the defendant company, and carrying a high voltage of electricity, was located in that tree twenty feet from the ground and three feet from the body of the tree. At the point of the wire near the body of the tree it had become uninsulated. But the decedent knew nothing of any impairment in the wire. In climbing the tree he came into contact with the uninsulated portion of the wire, which resulted in instant death. In that case, the trial court, in charging the jury, adopted the theory for which the defendants contend in the instant case. The charge follows:

"Then you will further inquire as to why plaintiff's intestate was in said tree, and if you further find that the decedent was in said tree without invitation or permission on the part of the defendant company, and that the defendant company had no reason to believe or anticipate that children would climb into said tree and come into contact with said

wire, and that the decedent knew that the wire through said tree was the property of the defendant company, and you find that plaintiff's intestate took hold of said wire and came in contact with it, knowing it was the property of the defendant company, I charge you that plaintiff's intestate, George Wolf, by his own act made himself a trespasser against defendant company, and if you so find, plaintiff cannot recover.''

The plaintiff, appealing, assigned error of the court in charging the jury as noted. The Court of Appeals held the instruction to be erroneous, and, further, that the decedent had a lawful right in the tree so far as the defendant company was concerned, for the reason that the tree was not on the lands of the company, nor owned or controlled by it, notwithstanding that the company was within its rights when it placed the wire in the tree. The court further held that when the company placed the wire in the tree

''the burden of keeping it free from danger—properly insulated and clear from any defects that the law requires of those who own or operate such dangerous agencies as an electric wire charged with a high voltage of electricity—continued with the company, and this duty vested in it at the time the decedent came in contact with the wire.''

In that case the plaintiff requested the trial court to charge the jury as follows:

''I charge you, as a matter of law, that it was the duty of the Mansfield Railway, Light & Power Company, under the circumstances shown in this case, to have anticipated that boys of tender years would climb into trees of the size of the one in question, and that if the Mansfield Railway, Light & Power Company maintained lines of wires through such trees, and through it they conveyed currents of electricity of high voltage, dangerous to life, it was the

duty of the company to so insulate and otherwise protect said wires so as not to cause injury to others who are not trespassers coming in contact therewith from injury.''

The instruction was refused. But the appellate court held the requested instruction to be sound law and clearly applicable to the facts.

In the case of *Chickering* v. *Lincoln County Power Co.,* 118 Me. 414 (108 Atl. 460), a boy while at play climbed into a tree and coming in contact with a naked wire was instantly killed. The court held that by climbing that tree the boy did not remove himself from the protection of the law. The court, sustaining plaintiff's right to recover, said:

''Human life is short enough and its burdens and responsibilities come soon enough to boys. To take from boyhood the legitimate pleasures and adventures of tree climbing would undoubtedly restrict the confines of that memory-cherished domain and lessen life's joys both there and thereafter.''

In *Thompson* v. *Slater, supra,* a boy eight years old climbed into a tree through which uninsulated wires extended. The boy sat on a limb above the wires. The limb broke, throwing him in contact with the wires. The court held that the defendant was liable because it could reasonably have anticipated that a boy would climb the tree, and, further, that it was not the breaking of the limb, but the lack of the insulation of the wires, that constituted the proximate cause of the injury. The court commented on the fact that the limbs came within seven feet of the ground, making climbing easy. In the case at bar the limbs came within six feet of the ground.

In *Znidersich* v. *Minnesota Utilities Co.,* 155 Minn. 293 (193 N. W. 449), the defendant maintained a line

of electric transmission along the public highway. The line passed along a five-acre tract of unoccupied land much used by children as a playground. A twelve year old boy was flying a kite that was carried by the wind toward the line of the electric wires. The kite string was caught in the wires immediately above one of the poles that supported the wires. The poles stood out in the open on the highway immediately adjoining the grounds where the children played. The pole was supplied with facilities for climbing. The boy ascended the pole for the purpose of releasing his kite string. He reached his hand and arm through between the heavily charged wires, which were uninsulated, and suffered a severe injury. From a judgment rendered for plaintiff, defendant appealed. Upon review it was held that the evidence presented issues of fact for determination by the jury and that the verdict for plaintiff was fully supported. To the same effect see the more recent case of *Brandenberg* v. *Equity Co-operative Exchange,* 160 Minn. 162 (199 N. W. 570).

In *Godfrey* v. *Kansas City Light & Power Co.,* 299 Mo. 472 (253 S. W. 233) a boy of twelve years of age was injured by coming in contact with an uninsulated wire passing through the branches of a walnut tree which he had climbed to gather nuts. The court held that even though he was trespassing upon land of a third party, this did not constitute a defense to the boy's injury.

In *Beckwith* v. *City of Malden,* 212 Mo. App. 488 (253 S. W. 17), the court held that it is not essential that a tree may be easy to climb in order to require an electric company stringing its wires through the branches to anticipate the presence of children in such a tree. It further held that a boy who climbed

a tree that stood on the right of way of a railroad company, which way was used as a path, was not a trespasser with reference to the defendant, although the right of way had never been opened to the public.

In *Grady* v. *Louisiana Light, Power & Traction Co.* (Mo. App.), 253 S. W. 202, it was held that, even though it be conceded that a child was trespassing on the right of way of a railroad company, he was not a trespasser as to an electric company maintaining its poles upon the railroad company's right of way. See, also, *Graham* v. *Sandhill Power Co.*, 189 N. C. 381 (127 S. E. 429).

"If the company is guilty of negligence in the maintenance of such appliances and an injury thereby results to one not a trespasser as against the company, it is not material that the person was, when injured, on the premises of a third party, so long as the company was bound to anticipate that persons in the pursuit of business or pleasure would go upon such premises and come in proximity to its appliances." Section 462, Curtis, The Law of Electricity.

For an extensive note on the duty of persons to guard against danger to children by electric wires, see 17 A. L. R. 833.

7. If there is some general probability of danger, the company has the duty of anticipating it and it is not necessary that it should know and appreciate the precise way an accident might occur because of danger: *Langevin* v. *Twin State Gas & Electric Co.*, 81 N. H. 446 (128 Atl. 681). In that case the plaintiff, a boy thirteen years of age, while crossing a bridge stopped to watch other boys who were fishing, and one of the boys who were thus engaged caught his fish line on an electric wire of the defendant company. In his attempt to free his line he pulled the wire against another wire of the defendant company,

which burned off and, falling upon the plaintiff, injured him. For many years, boys had habitually fished from this bridge at the place where the plaintiff was injured, and fish lines had been frequently seen hanging over the wires. The custom of fishing at that point was common knowledge in the neighborhood. The court held that whether the electric company's negligence in failing to keep its highly charged wires in repair was the proximate cause of the boy's injury would be a question of fact for the jury.

8. The degree of care and the caution required of a child must be graduated upon the knowledge, discretion, maturity and experience of the child in each case as it arises: *Dubiver* v. *City Ry. Co.*, 44 Or. 227 (74 Pac. 915, 75 Pac. 693, 1 Ann. Cas. 889); *Russell* v. *Oregon R. & N. Co.*, 54 Or. 128 (102 Pac. 619); *Gigoux* v. *Yamhill County*, 73 Or. 212 (144 Pac. 437).

In *Fisher* v. *Burrell*, 116 Or. 317 (241 Pac. 40), this court held that, where a duty exists with respect to the safety of young children, their age and capacity must be taken into account, so that what might be reasonable care with respect to the safety of adults, who are capable of looking out for themselves, might not be reasonable care, but gross negligence, with respect to children.

9. We have said that the alleged negligence of the defendants presented a jury question. We also hold that the court properly denied the motion upon defendants' contention that the boy was guilty of contributory negligence. It is only where no material fact is left in doubt and no reasonable deduction or fair inference other than contributory negligence can be drawn from the proofs by the jury that the court can say, as a matter of law, that contributory

negligence has been established; and even in cases where the facts are not disputed, if reasonable minds might draw different conclusions upon questions of negligence, the question remains one for the jury's determination: *Wolf* v. *City Ry. Co.,* 45 Or. 446 (72 Pac. 329, 78 Pac. 668); *Webb* v. *Heintz,* 52 Or. 444 (97 Pac. 753); *Greenwood* v. *Eastern Oregon Light & Power Co.,* 67 Or. 433 (136 Pac. 336); *Watts* v. *Spokane, P. & S. Ry. Co.,* 88 Or. 192 (171 Pac. 901); *Grant* v. *State Industrial Acc. Com.,* 102 Or. 26 (201 Pac. 438); *Saylor* v. *Enterprise Electric Co.,* 110 Or. 231 (222 Pac. 304, 223 Pac. 725).

There being no error in the court's instructions, this case must be affirmed. It is so ordered.

AFFIRMED.

McBRIDE, C. J., and BELT, J., concur.

RAND, J., dissents.

---

Rehearing denied April 20, 1926.

## On Petition for Rehearing.

(245 Pac. 317.)

For the petition, *Messrs. Wilbur, Beckett, Howell & Oppenheimer* and *Messrs. Hayden, Langhorne & Metzger.*

No appearance *contra.*

On March 16, 1926, we affirmed the judgment in favor of the plaintiff for the recovery of damages in the sum of $4,000 on account of the death of Walter Cooper, her only son, on May 24, 1922, by coming in contact with uninsulated electric wires owned, main-

tained and operated by North Coast Power Company, a corporation, one of the defendants herein. For a full statement of the facts in this case, see our opinion of that date.

The serious question involved relates to the ruling of the court in denying defendants' motion to take the case from the jury.

It appears that the defendant company constructed and operated, over lands frequented by the public for camping, picnic and play grounds, a power line that carried a dangerous current of electricity. The land belonged to Mrs. Newsome, of Portland, but the company, after invading her property and erecting its power line over it and through the limbs of a large yew tree growing thereon, obtained from her a right of way to set its poles and maintain its lines over her land. The tree, which, by reason of its widespreading branches, was especially attractive for climbing, had been topped by the defendants at a height of sixteen feet four inches from the ground. The stump remaining was two feet eight inches in diameter at the topmost point, and was four feet four inches below the company's sagged wires. While engaged in play, Walter Cooper climbed to the top of the stump and, by some means unknown, came in contact with the heavily charged wires and was instantly killed.

There is no testimony tending to show that this twelve year old boy knew that the defendant company's wires were above the tree, or that they carried an electric current.

In our former opinion we held that the picnic party, of which Walter Cooper was a member, committed no trespass upon the rights of the defendant by going upon the Newsome property. So far as the

defendant company was concerned, they were rightfully upon the Newsome land. Moreover, the children had a right to climb the tree over which the company's lines were maintained. See authorities cited in our former opinion.

In their petition for a rehearing the defendants say, among other things, that the doctrine enunciated in *Riggle* v. *Lens,* 71 Or. 125 (142 Pac. 346, Ann. Cas. 1916C, 1083, L. R. A. 1915A, 150), and in *Haynes* v. *Oregon-Washington R. & N. Co.,* 77 Or. 236 (150 Pac. 286), has been practically repudiated by our decision, and that, if the doctrine therein announced "is to be no longer adhered to by this court, these cases * * should be expressly overruled and repudiated in order that there may be some certainty as to the state of the law on this question in this state."

There is nothing in our decision that is repugnant to the doctrine enunciated in the above cases.

In *Riggle* v. *Lens, supra,* an infant of the age of five years was drowned in a mill-race owned by defendant while at play on the defendant's premises. In discussing that case the court said:

"This is not a case where the injury was claimed by reason of negligence in not properly guarding a concealed, dangerous condition."

The question was whether the owner of the mill-race was liable for the death of the child, who, while trespassing upon the premises of the owner of the mill-race and playing upon its unguarded banks, fell in and was drowned.

In the case of *Haynes* v. *Oregon-Washington R. & N. Co., supra,* the plaintiff, a minor, was injured by the fall of a bank of earth forming a cave near the railroad company's right of way, in a cut formed by the right of way. The court held that the plaintiff

was a trespasser upon the defendant's right of way, and that the defendant owed no duty to plaintiff as a trespasser except that of not inflicting any wanton or reckless injury.

The facts in the foregoing cases differ substantially from the facts in the case at bar.   In those cases, the persons were trespassers upon the property of defendant when accidentally injured.   In this case, we have seen that the plaintiff was rightfully on premises that were lawfully frequented by the public for purposes of recreation, and that he was not a trespasser against the defendant at the time he met his death.

The petition for rehearing will be denied.

REHEARING DENIED.

MCBRIDE, C. J., and RAND and BELT, JJ., concur.