Argued March 26; reversed September 16, 1930

# SANDER *v.* CALIFORNIA-OREGON POWER CO.

(291 P. 365)

*A. E. Reames* of Medford (Gus Newbury of Medford, on the brief) for appellant.

*Kelly & Kelly* of Medford (Kelly & DeSouza of Medford, on the brief) for respondent.

BELT, J.   This is an action to recover damages for loss of life alleged to have been caused through the negligence of the defendant. The decedent, an intelligent and industrious boy 17 years of age, was killed on July 7, 1926, while repairing a telephone line which he caused to come into contact with a high voltage wire of the defendant power company. He was not an employee of either the telephone company or the defendant. The two telephone wires ran east and west and were strung on poles used exclusively by the telephone company. The two power lines of the defendant, carrying 2,300 volts, crossed over the telephone wires at a right angle. For several years the telephone wires were attached to an upper and a lower bracket, but for about two years prior to the accident the upper bracket had been abandoned. The lower wire during such period of time was supported by a wire loop around the pole. The upper wire was attached to the lower bracket. On the day of the tragedy, the upper wire broke at a point about five feet from the lower bracket, leaving the short end of the wire hanging down alongside of the pole. The other part—the long end of the wire—fell to the ground.

Plaintiff's home was in the country and at the end of the telephone line. A neighbor called for the purpose of using the telephone. The boy volunteered to repair the line. He spliced a piece of wire to the line

on the ground, and, after attaching it to his belt, climbed the pole. There were no iron pegs or steps on the pole to facilitate climbing. When the boy reached the loop which supported the lower telephone wire he put his leg over the wire in order to maintain his position and carry on the work. No attempt was made to connect or splice the broken wire to the end of the wire strung on the lower bracket. The boy was not content to so repair the line that it would be in the same condition as prior to the accident. With his body in contact with the lower telephone wire, he proceeded with his bare hand to draw the upper wire to the upper bracket which, according to the allegations of the complaint, could not be done without bringing the wire into contact with the high tension wires of the defendant. Thus was this inexperienced boy electrocuted doing an act which, although kindly, was, nevertheless, foolhardy in the extreme. When the telephone wire touched the live current wire, the circuit was complete. It is plain that no accident would have occurred had the boy attached the upper wire to the lower bracket. It is also clear that no experienced lineman would have made the repair of the line in the manner shown in the instant case.

In brief, plaintiff charges the defendant with negligence in allowing its high voltage wires to sag and to come too close to the telephone wires, thereby endangering the lives of those engaged in work on them. Plaintiff also alleges that the wires were not properly insulated. Defendant denies the charge of negligence and alleges, as an affirmative defense, that the boy's death was the proximate result of his own negligence. From a verdict and judgment in favor of plaintiff, the defendant appeals.

The motion of defendant for nonsuit presents two major questions: Is there any substantial evidence tending to show that the negligence of the defendant was the proximate cause of the boy's death? Has it been shown, as a matter of law, that the decedent was guilty of contributory negligence? If the first question is answered in the negative, there is no reason to consider the second proposition.

■ Defendant contends that the boy was a trespasser, or, at least, a bare licensee. If this were an action against the telephone company it might well be argued that such was the status of decedent. So far as the defendant is concerned the boy had a right to repair the telephone line in any manner not interfering with its power lines. There was no joint user of the telephone poles. The power lines were strung on separate poles. While the doctrine of non-liability to trespassers or licensees has been applied in some jurisdictions where the trespass or license was with respect to the property of a third person, it has not been so applied in this state. See *Cooper v. North Coast Power Co.,* 117 Or. 652 (244 P. 665, 245 P. 317), wherein many of the cases are collated.

Neither do we think there is evidence tending to show that the telephone company, expressly or impliedly, invited the decedent to climb its poles and make repair of wires. There is some evidence that six or seven years ago plaintiff repaired the telephone line when it was down during a snowstorm and that the manager of the company expressed his approval, after inspecting the work, by saying: "Very good. We couldn't get around any sooner to fix it." Regardless of whether this incident affords any basis for the claim

that the boy was an invitee—and we think it does not—there is no evidence that the defendant power company had knowledge of the boy's alleged relationship with the telephone company.

Conceding that, so far as the defendant is concerned, the deceased was not strictly a trespasser or licensee it does not follow that the power company was guilty of any breach of duty to him. In our opinion the more pertinent inquiry is: Could the defendant reasonably anticipate that an inexperienced boy, not in the employ of either company, would climb a telephone pole upon which there were no cleats or pegs and undertake such a hazardous task? Is it fair or reasonable to assume that the power company had reason to anticipate that the telephones would be repaired in the manner shown in the instant case? Certainly no lineman would have done what this poor boy did. It was just a case of a volunteer intermeddling with the business of the telephone company and bringing about a condition resulting in untimely death.

■ Negligence involves the breach of a legal duty. This duty may arise out of contractual relations or it may be imposed by law. As stated in 20 R. C. L., p. 8:

"Legal rights are relative, and arise out of those complex relations of human society which create correlative rights and duties, whose performance is so necessary to the good order and well being of society that the state makes their observance obligatory."

■ It will be recalled that, in the instant case, there was no relationship of master and servant. Decedent was not carrying on the work with the knowledge and consent of either the telephone company or the defendant power company. If defendant owed any duty to him it was by reason of his being at a place which could

have been reasonably anticipated. Those engaged in the transmission of such a dangerous commodity as electricity must exercise the utmost care in the construction and maintenance of the wires to avoid injury to those persons likely to come into contact with them: *Perham v. Portland Electric Co.,* 33 Or. 451 (53 P. 14, 40 L. R. A. 799, 72 Am. St. Rep. 730) ; *McClaugherty v. Rogue River Electric Co.,* 73 Or. 135 (140 P. 64, 144 P. 569). The degree of care is commensurate with the danger involved. The defendant was not an insurer against accident, although it must be conceded that there are some cases which practically go to such an extreme position. Due care consists in guarding against probabilities—not possibilities. Applying these general and fundamental principles of negligence to the conduct of the defendant company, it follows that if it committed no breach of duty no cause of action arose.

We are not dealing with a case where an employee of the telephone company while engaged in the work of repairing the line sustained injury on account of coming into contact with a high tension wire of the defendant. Under such circumstances its duty in reference to the construction and maintenance of its wires would be clear. The same rule would apply even to members of the public who were injured at a place where there was a reasonable likelihood that they would come into contact with such wires. Cases cited wherein pedestrians on a public street have come into contact with a high tension wire have no application. Neither are authorities in point wherein employees have been injured while carrying on their work at a place where they have a lawful right to be. We may also exclude from our consideration cases based upon facts involving the attractive nuisance doctrine.

Respondent relies strongly upon *Cooper v. North Coast Power Company,* supra. In that case a boy 12 years of age was killed by climbing a tree and coming into contact with an uninsulated electric wire of the defendant company. The tree, with its low-hanging branches, was located at a place where the company knew people were accustomed to go for the purpose of picnicking and enjoying outdoor sports. The power company, instead of using standard equipment, had strung its high tension wires to a tree which had been topped for a distance of approximately 16 feet above its branches. There was eidence in that case upon which to base the reasonable inference that the defendant company knew, or ought to have known, of the probability that some vigorous boy, while engaged in play, would climb this tree and come into contact with these wires. Most boys who climb trees go to the top. The company was bound to know that which is common knowledge, namely, that boys like to climb trees. The authorities cited in that case support the conclusion reached that there was evidence tending to support the charge of negligence, sufficient to go to the jury. It seems to us that a bare statement of the facts in the Cooper case readily distinguishes it from the one at bar. In the instant case the telephone pole, on account of its location and the absence of facilities for climbing it—such as iron pegs or cleats—had none of the charm or attractiveness that a tree with its inviting branches would have to a boy. The tree climbing cases are well considered and reviewed in *Cooper v. North Coast Power Co.,* supra, and we see no need of repetition. Also see notes in 17 A. L. R. 833 and 49 A. L. R. 1054. No case has been directed to our attention, excepting perhaps that of *Znidersich v. Minnesota Utilities Co.,*

155 Minn. 293 (193 N. W. 449), wherein, under a similar state of facts, liability for negligence has been sustained. In the Minnesota case a boy's kite became entangled in a high tension wire. He climbed the pole and, reaching through the wires to rescue his kite, was electrocuted. The pole was on the highway immediately adjacent to playgrounds which were not fenced and there were iron pegs on the side of the pole— placed there to facilitate climbing. In the opinion of the writer, this case practically made the defendant company an insurer against accident. To hold that the company could reasonably anticipate that any person not engaged in the repair of its lines would leave a place of safety and climb to such a hazardous position is, in our opinion, unsound.

The later case of *Bunten v. Eastern Minnesota Power Company,* 178 Minn. 604 (228 N. W. 332), is, according to our views, a more accurate declaration of the law. The court said:

"But where an electric company maintains its wires at a height at which they would not come in dangerous proximity to such persons or things as it reasonably ought to anticipate might rightfully come under or near them, it is not chargeable with negligence because some one doing an act which it has no reason to expect suffers an injury which might not have been sustained if the wires had been higher."

In the *Augusta Railway Co. v. Andrews,* 89 Ga. 653 (16 S. E. 203), reported in volume 4 at page 378 of American Electric Cases, it was held:

"If a person, however, leaves his proper place in the street or highway, and climbs a pole 23 feet high, which supports an electric wire, taking with him a wire to throw across the one on the pole, and does this without permission from the company whose system

he has thus entered upon, and by reason of the contact of that company's wire with the 'feed' wire of another company, is injured, he can not recover from either company.''

The court, in referring to plaintiff in that action, said:

''He does not allege any fact going to show that the defendant company was under any duty or obligation to protect him at the time or place of the injury.''

In *State ex rel. Kansas City Light & Power Company v. Trimble,* 315 Mo. 32 (285 S. W. 455, 49 A. L. R. 1047), a bright, intelligent boy 14 years of age climbed a pole and came into contact with high tension wires which were uninsulated. The negligence charged was (1) the maintenance and use of steps and poles so as to constitute an "attractive nuisance" or "lure" to deceased and to boys of his age and experience to climb thereon; (2) failure to keep the wire properly insulated. The court, in denying liability, said:

''It would seem that unless the pole, as maintained, constituted an attractive nuisance or a lure to boys to climb it, the failure to keep the wire sufficiently insulated would not constitute negligence in this case or as to deceased, since the wire was 22 feet above ground and high out of reach, except, of course, to one having legitimate business up there.''

· The court refused to apply the doctrine of attractive nuisance and, therefore, found that the power company was not guilty of negligence. The decision in favor of the defendant was also based upon the ground that the decedent was guilty of contributory negligence as a matter of law.

■ No presumption of negligence arose from the mere happening of the accident. It is not a case of *res ipsa loquitur.* The wire which had fallen to the

ground was not owned by the power company, nor did the company have any control over it. The manner in which the accident happened does not, of itself, speak negligence.

We come to the conclusion that there is no evidence tending to show a breach of any legal duty which the defendant power company owed to the deceased. Hence, there is no negligence upon which to base a cause of action. In view of this result it is unnecessary to discuss the question of contributory negligence, but we have no hesitancy in saying that, in our opinion, this issue was properly submitted to the jury. The degree of care which decedent was obliged to exercise is to be measured by the standard of conduct of a boy of similar age, experience and capacity. A different question would be presented if a lineman of experience and mature judgment were involved.

The judgment in favor of plaintiff is reversed and the action dismissed.

COSHOW, C. J., and BEAN and BROWN, JJ., concur.