# DREW *v.* LETT.

[No. 14,587.   Filed October 6, 1932.]

*Flavian A. Seal* and *William D. Curll,* for appellant.
*Josiah G. Allen, Elmer E. Hastings, Arthur W. Allen*
and *John S. Hastings,* for appellee.

WOOD, C. J.—Appellant brought suit against appellee by a complaint in one paragraph to recover for damages suffered from the death of his infant son eleven years old as a result of the alleged negligent conduct of appellee. A demurrer for want of facts was sustained to the complaint. The ruling on the demurrer is the only error assigned for consideration.

The complaint, omitting the formal parts thereof, is in the following language:

"The plaintiff complains of the defendant and alleges that on the 13th day of June, 1931, and for a long time prior thereto, the defendant was and had been in possession, management and control of a certain 20-acre tract of land. (Describing it.) That at and during said time there was an abandoned coal mine located on said real estate known as Green Mound Coal Mine. That

said coal mine is located adjacent to the Big Four Railroad and on the north side of said tract of ground, and is about fifty feet in depth. That there is an entrance to said coal mine by what is known as a manway, which extends and slopes from the surface of the ground to the bottom of the mine, and that said manway was equipped with a winding stairway that is made up of flights consisting of about five steps each, with a small landing at the bottom of each flight, and the same was used as an egress and ingress for the coal miners to go to and from the bottom of said coal mine; that over the entrance of said manway was a small frame shed about six feet square and ten feet high, and that on the north side thereof was a wooden door about five feet high and two and one-half feet wide, and that this was the only entrance to said manway from the surface of the ground.

"That at said time there was a railroad switch leading to said mine, and there were a number of open and vacant buildings surrounding the same; wagon roads and towpaths were leading to and from the mine and vicinity of the said manway; the grounds surrounding the mine were level and open and that these environments made the said grounds about said mine and manway an inviting place for children to play, and that the children of the neighborhood living near said mine did play there with the knowledge, approbation and consent of the defendant.

"That on said 13th day of June, 1931, and for more than a year prior thereto, said coal mine had been abandoned and no person or persons were working in or about the same, except the defendant, who frequently worked at and about said mine and manway engaged in tearing down the tipple of said mine, in tearing down and removing parts of other buildings there, and in cleaning up the grounds around said mine and manway;

that by reason of the abandonment of said coal mine, and the nonuse thereof, gases were formed and stagnated and poisonous gases were created and collected in the mouth of said manway known as the 'damps'; that the presence of said poisonous condition of the air and of the 'damps' in said manway could not be seen or ascertained, but that the same was fatal to any human being who came in breathing contact therewith.

"That the door of said shed over the entrance to said manway was on the 13th day of June, 1931, and for many months prior thereto left open, and the entrance to said stairway and the mouth of said manway exposed to the danger of children entering the same while playing· about said mine grounds and premises; that no notice or warning of any kind had been given by the defendant of the dangers thereof, and that no guards or barriers had been made or established to keep children from entering said door to said shed and manway.

"That the defendant knew of the location of said manway, of the frame shed over the same, of the open door to said shed, of the poisonous air, and of the 'damps' in said manway, of the frequency of children playing about there, and of the danger to the lives of children entering said manway, or by the exercise of reasonable care could have known all such. That it became and was the duty of the defendant to nail and securely fasten the door to said shed by proper bars and barriers, and to keep and maintain said door so fastened that children could not enter there; that notwithstanding said duty, and wholly in disregard of the same, the said defendant carelessly and negligently and knowingly suffered and permitted the said door to said shed to be and remain open, and that said manway and stairway leading down from the same exposed to the use of children and to their great danger of the loss of life therein.

"That the plaintiff was, on and prior to the 13th day

of June, 1931, the father of one Courtland J. Drew, who was a strong, healthy, bright boy, and possessed of all the natural instincts of childhood, and was eleven years of age; that the plaintiff and his wife at all times vigilantly watched after the safety of said child; that on said day plaintiff and his wife permitted their said son Courtland, accompanied by an older sister and younger brother, to visit the home of their neighbor, Riley Edrington, about one mile distant, to play with the Edrington children; that Mr. and Mrs. Edrington have a number of children and they are both experienced in handling children and in looking after their welfare; that Mrs. Edrington was at home on that day and carefully looked after said children, including Courtland; that the residence of Riley Edrington was located about 150 feet from said manway, but the view thereof was entirely obstructed by the hillside, trees and undergrowth; that on said day, about 4 o'clock p. m., the said Courtland J. Drew, accompanied by his younger brother and one of the Edrington boys about the same age, without any fault of plaintiff or any member of his family, and without any fault of Mrs. Edrington, and without any knowledge on her part, wandered into said shed through said open doorway and started to descend said stairway; that said Courtland J. Drew descended the first flight of steps and reached the second or third step of the second flight when he was overcome and suffocated by said poisonous air and 'damps,' and because thereof fell two or three feet to the landing of said second flight of stairs and there died.

"That the said suffocation and death of said Courtland J. Drew was due wholly to the carelessness and negligence of the defendant in permitting the door to said shed to be and remain open, and in permitting the said manway and stairway leading down therefrom to be open, visible and accessible to the use of children and

to the use of said Courtland J. Drew; that if the door of said shed had been properly barred, as it was the duty of the defendant to do, the said Courtland J. Drew could not and would not have entered said shed and manway and been killed.

"That said Courtland J. Drew was then but eleven years of age and had no knowledge or information of the danger of entering said shed and manway, nor the dangerous condition of the air or of the 'damps' therein, nor of the great peril and danger in going into said shed and manway to play, nor was there any barriers, signs or warnings about said shed and manway to warn him of the danger there.

"That the suffocation and death of the said Courtland J. Drew were received and brought about by the negligence and carelessness of the said defendant as aforesaid, and without any fault or negligence whatever on the part of the plaintiff or his wife; that the plaintiff and his said son, Courtland, were each wholly ignorant of said dangers of said manway and the presence of the 'damps' therein. That the plaintiff had no knowledge or information whatever that said shed was open or accessible to the use of children or to anybody else.

"That the open door to said shed, the open shed and the open stairway leading down from the mouth of said manway were naturally inviting and inclined to attract a child, and, being without warning of danger and of immature judgment, the said Courtland J. Drew was thereby attracted to said place, to the exploration thereof, and to his death; that on account of his tender years the said Courtland J. Drew was non sui juris and incapable of appreciating the danger there was in entering the said shed and manway, and that the carelessness and negligence of the defendant in permitting said shed to remain open and said manway exposed to use was the sole cause of said child's death."

If this complaint states a cause of action it must be upon a theory which seeks to invoke the doctrine of an "attractive nuisance" as applied to children *non sui juris.*

This doctrine only applies in favor of children of tender years, who are too young to understand or appreciate danger. 45 C. J., p. 771. There are jurisdictions where the doctrine is not recognized. "However, it is not an open question in this state that an individual or corporation is liable for injuries to a child non sui juris caused by leaving unguarded and exposed machinery or surroundings which are of such a nature and character as to naturally tempt and allure children to play with or otherwise use the same." *City of Indianapolis* v. *Williams* (1915), 58 Ind. App. 447, 108 N. E. 387. Neither can the court say as a matter of law that a boy eleven years of age acting under the facts and circumstances as alleged in the complaint in the instant case was guilty of contributory negligence. *City of Indianapolis* v. *Williams, supra.* "The question of the particular child's ability to appreciate the danger, and his power to avoid it, are usually questions of fact for the jury." *Faylor* v. *Great Eastern, etc., Co.* (1919), 45 Cal. App. 194, 187 Pac. 101. Furthermore, this court, in the case of *Lewis* v. *Cleveland, etc., Co.* (1908), 42 Ind. App. 337, 84 N. E. 23, in which a transfer to the Supreme Court was denied October 8, 1908, said: "The courts of Indiana do not regard a child of tender years, attracted by something on the premises which appeals to his curiosity, as a trespasser. 'What an express invitation would be to an adult, the temptation of an attractive plaything is to a child of tender years.'" Our Supreme Court, in the case of *Penso* v. *McCormick* (1890), 125 Ind. 116, 25 N. E. 156, which was a case involving the application of the "attractive

nuisance" doctrine, said: "It is a well recognized doctrine that persons are required to use greater care in dealing with children of tender years than with older persons who have reached the age of discretion, and that greater care is required to avoid injury to them *even when they are trespassers.*"

The reason for this rule is very clearly and forcibly expressed by C. J. Elliott in the case of *Indianapolis, etc., Ry. Co.* v. *Pitzer* (1886), 109 Ind. 179, 6 N. E. 310, in the following language: "The cases last cited all recognize the rule that children of tender years are not to be treated as persons of mature years. This is a reasonable and humane rule, and any other would be a cruel reproach to the law; but the law merits no such reproach, for, throughout all its branches, whether of tort or contract, there runs, like the marking red cord of the British navy, a line distinguishing children of years too few to have judgment or discretion from those old enough to possess and exercise those faculties. This is a doctrine taught by every man's experience, and sanctioned by our law. A departure from it would shock every one's sense of justice and humanity. Cases very closely resembling the present recognize and enforce this distinction, and without substantial diversity of opinion the general principle is recognized, although there is not entire uniformity in its application. Dr. Wharton, in discussing the general subject, says: 'The protection of the helpless from spoliation is one of the cardinal duties of Christian civilization; and when those so helpless are young children, this duty is aided both by the instincts of nature and the true policy of the state.'"

In the case of *Chicago, etc., Co.* v. *Fox* (1904), 38 Ind. App. 268, 70 N. E. 81, this court quoted with approval from *Alabama, etc., R. Co.* v. *Crocker* (1901), 131 Ala. 584, 31 So. 561, the following

principle of law: "It is the apparent probability of danger rather than the rights of property that determines the duty and measure of care required of the author of such a contrivance, for ordinarily the duty of avoiding known danger to others may under some circumstances operate to require care for persons who may be at the place of danger without right."

The cases of *Lyttle* v. *Harlan Town Coal Co.* (1915), 167 Ky. 345, 180 S. W. 519; *Brandenberg* v. *Equity Co-op. Exchange* (1924), 160 Minn. 162, 199 N. W. 570; *Central Coal, etc., Co.* v. *Porter* (1926), 170 Ark. 498, 280 S. W. 12, and *Faylor* v. *Great Eastern, etc., Co., supra* (the last two being cases where children entered mine shafts) all adhered to the rules adopted and applied in this state. Many authorities are cited and reviewed by the courts in the cases heretofore referred to in this opinion. Their repetition is not deemed necessary for the purposes hereof.

"Any inference of neglect on the part of (appellant), which might otherwise have arisen, is repelled by the averment that both he and his wife were ignorant of the existence of danger at the place in question, and by the general averment that both the parents and son were without fault." *City of Indianapolis* v. *Emmelman* (1886), 108 Ind. 530, 9 N. E. 155.

Appellee's contention that the entering of the mine through the open manway was not the proximate cause of the death of the child, but that death was caused by the "damps" or poisonous gases in the mine, which was an independent intervening cause of death for which appellee would not be liable, is not supported by the authorities. *Faylor* v. *Great Eastern, etc., Co., supra.*

When tested by the rules of law above set forth, as

heretofore announced by the courts of our own and other jurisdictions, in cases where the "attractive nuisance" doctrine has been under consideration, we conclude that the complaint stated a good cause of action. The judgment is reversed with instructions to overrule the demurrer, and for further proceedings consistent with this opinion.